# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal No. 3:07-CR-289-M |
| | § | |
| BRIAN L. POTASHNIK, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Joint Motion to Sever filed by Defendants Brian and Cheryl Potashnik (the "Potashniks") [Docket Entry #517], Defendant Lewis's Motion to Sever Counts 15, 17, 20, and 31 from Counts 1-9, 21-25, and 27-30 [Docket Entry #335], Defendant Slovacek's Motions for Relief from Misjoinder of Counts 1-9, 21-25, 26 and 27-30 [Docket Entries # 370, 374, 376, 377], and Defendant Hodge's Motion for Relief from Misjoinder Under Rule 8 and Prejudicial Joinder Under Rule 14 [Docket Entry #236].[1] On October 2, 2008, the Court heard arguments regarding these Motions. At this hearing, the Court **GRANTED** Hodge's Motion,[2] but reserved judgment on the remaining Motions. Having considered the pleadings, the

---

[1] FED. R. CRIM. P. 8 states:
    **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
    **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

FED. R. CRIM. P. 14 states, in relevant part:
    **(a) Relief.** If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

[2] In its response, the Government asked the Court to withhold a ruling on Hodge's Motion until after the November election. However, given the nature of the Counts naming her, under Rule 8 Hodge should have been severed regardless of her re-election as a State Representative, so this Court did not see a need to reserve judgment on the issue until after the election. Hodge was in fact re-elected as a State Representative on November 4, 2008. The

arguments of counsel, and the applicable law, the Court finds that these Motions should be **GRANTED IN PART** and **DENIED IN PART**.

## Procedural History

This is a criminal matter involving the trial of twelve criminal Defendants[3] and six Counts of alleged conspiracies, with thirty-one total Counts. This Court previously denied severance Motions filed by Defendants Robertson, Dean, and Lewis [Docket Entries #163, 209, and 232, respectively]. In its Memorandum Opinion and Order of January 18, 2008 ("Memorandum Opinion"), the Court reserved three severance issues for further determination:[4]

1. Whether Counts 10 and 15 are sufficiently related to Counts 1-9 and 21-25 to be tried together;

2. Whether a joint trial of Count 18 and Counts 10 and 15 is proper;

3. Whether joinder of Counts 21-25, Count 26, and Counts 27-30 (the "Tax Counts") with the remaining Counts is proper.

At the October 2, 2008 hearing, this Court granted Hodge's Motion for Relief from Misjoinder as to Counts 1-9 and 21-25, answering the first question above in the negative.[5] This Memorandum Opinion will elaborate on the Court's reasons for granting the severance of

---

parties agreed to the severance of Hodge subject to her re-election, and the Court also finds severance appropriate on this additional ground, so that Hodge may fulfill her duties to her constituents while the legislature is in session. However, the severance of Counts 1-9 and 21-25 also directly affects: (1) the Potashniks, who are also named in Counts 1-9; and (2) several additional pending Motions that request severance of Counts 1-9 and 21-25 (rather than simply severance of Hodge) under Rules 8 and 14. So while the severance of Hodge is not now disputed, this Memorandum Opinion will elaborate on the Order severing Counts 1-9 and 21-25 from the remaining Counts, and will dispose of the pending severance Motions.

[3] There were fourteen Defendants originally indicted in this matter, but two have since pled guilty to the charges alleged.

[4] The Court notes that its Memorandum Opinion was not binding on the other Defendants and did not in any way prevent the assertion of the same grounds for severance at a later date.

[5] The decision to grant Hodge's Motion also partially disposed of: (1) Lewis's Motion to Sever Counts 15, 17, 20, and 31 from Counts 1-9, 21-25, and 27-30 (leaving only the propriety of joinder of Counts 27-30 in dispute); (2) Slovacek's Motions to Sever Counts 1-9 and 21-25 (joined by Rashad) from the remaining Counts, leaving only Slovacek's Motions for Relief from Misjoinder of Counts 26 and 27-30 in dispute; and (3) the Potashniks' Joint Motion for Severance of Counts 1-9, leaving only the propriety of joinder of Counts 10-14 with the remaining Counts in dispute.

Counts 1-9 and 21-25. The Court will then address the propriety of joining Counts 10-14 with the remaining Counts, including Counts 15 and 18, as to the Potashniks, which in part addresses the second remaining question. Finally, the Court will discuss the propriety of joining the Tax Counts with the remaining Counts as to all Defendants, in response to the third question above.[6]

## Factual Background

On September 27, 2007, the Government filed a 31 Count Indictment against fourteen named Defendants. Two of the Defendants have entered into plea agreements.[7] Of the remaining twelve Defendants, eight have filed severance Motions, alleging improper joinder under Rule 8(b), or in the alternative, prejudicial joinder under Rule 14. Since Rule 8(b) requires the Court to examine the facts underlying each Count in the Indictment, the following is a brief summary of the facts alleged, taken as true by the Court for the purpose of determining the propriety of joinder.[8] The Court emphasizes that it assumes the following facts to be true *solely* for the purpose of evaluating the propriety of joinder, and that the Court makes no factual findings with respect to these allegations, as to which the Defendants proceeding to trial are presumed to be innocent.

Counts 1-9 of the Indictment allege a conspiracy to commit bribery concerning a state government receiving federal benefits, in violation of 18 U.S.C. § 371, and bribery concerning a state government receiving federal benefits and aiding and abetting, in violation of 18 U.S.C. §§ 666(a)(1)(B) and (2), for acts occurring between October 1, 2002, and October 1, 2004. These Counts name Defendant Hodge and Defendants Brian and Cheryl Potashnik, and allege that in

---

[6] Addressing joinder of the Tax Counts will dispose of Lewis's Motion to Sever Counts 15, 17, 20, and 31 from Counts 21-25 and 27-30 [Docket Entry #335], and Slovacek's Motions for Relief from Misjoinder of Counts 21-25, 26 and 27-30 [Docket Entries # 374, 376, 377]. However, the Court notes that it previously severed Slovacek and Rashad under Rule 14, and therefore Slovacek's remaining severance arguments are moot.

[7] On April 15, 2008, Defendant Allen McGill entered into a plea agreement with the Government. On April 30, 2008, Defendant Andrea Spencer entered into a plea agreement with the Government.

[8] *See United States v. Phillips*, 664 F.2d 971, 1016 n.67 (5th Cir. 1981).

her official capacity as a State Representative, Hodge provided assistance to the Potashniks, who were seeking approval of pending tax credit applications from the Texas Department of Housing and Community Affairs (TDHCA) for affordable housing developments located in Hodge's district.

These Counts allege that the Potashniks, using personal checks and money orders, paid portions of Hodge's rent and utilities, and for the installation of new carpet in her home, in exchange for Hodge's assistance with the tax credit application process. Such assistance included Hodge's submission of supportive letters to the TDHCA, which counted for points in the tax credit scoring system. In the October 2 hearing, this Court severed from the remaining Counts, for improper joinder under Rule 8(b), Counts 1-9 and Counts 21-25 (alleging false and fraudulent statements by Hodge on her income tax return, based on her failure to fully report her income, including monies paid on her behalf by the Potashniks).

Count 10 alleges a conspiracy to commit bribery concerning a local government receiving federal benefits, in violation of 18 U.S.C. § 371. This Count names Defendants Hill, Lee, Farrington, Robertson, Spencer, Slovacek, and the Potashniks. It alleges that from October 1, 2003, through June 20, 2005, these Defendants conspired to unjustly enrich Hill and Lee, in exchange for their official acts on the Dallas City Council ("City Council") and the Dallas City Plan and Zoning Commission ("CPC"), to further the business interests of the Potashniks. Counts 11-14 incorporate the substantive offenses behind the conspiracy charge in Count 10, and allege bribery concerning a local government receiving federal benefits and aiding and abetting, in violation of 18 U.S.C. §§ 666(a)(1)(B) and (2) and § 666(a)(2).

Counts 10-14, the "Bribery Counts," allege that in his official capacity, Lee moved the CPC to recommend approval of zoning change applications for the Potashniks' projects, and that

Hill moved the City Council to accept the CPC's recommendations, in exchange for payments made through sham consulting agreements and a front company, Farrington & Associates, to conceal the illegal nature of the payments. These Counts also allege demands by Hill and Lee that the Potashniks award construction contracts, through sham deed restrictions, to associates of Hill and Lee.

Count 15 alleges a conspiracy to commit extortion, in violation of 18 U.S.C. § 1951, for acts from August 2004, through June 20, 2005. Counts 16-17 contain the substantive offenses underlying the conspiracy charge in Count 15, and allege extortion by public officials and aiding and abetting, in violation of 18 U.S.C. §§ 1951 and 1952, for acts on February 22, 2005, and May 11, 2005, respectively. The facts underlying the "Extortion Counts" involve Hill and Lee conditioning their official support for the tax credit projects of an unindicted housing developer ("Developer") upon compliance with extortionate demands for payments to their associates under sham consulting agreements and deed restrictions. These Counts name Defendants Hill, Lee, Reagan, McGill, Rashad, Robertson, Spencer, Slovacek, Dean, Lewis, and Farrington.

Count 18 alleges a conspiracy to commit deprivation of honest services by wire fraud, in violation of 18 U.S.C. § 1349, for acts from November 5, 2004, through June 20, 2005. This Count names Defendants Hill, Lee, Farrington, Spencer, and Slovacek. It alleges that Lee, Spencer, and Slovacek created for-profit business entities, The LKC Dallas ("The LKC") and Kiest Blvd., L.P. ("Kiest Blvd."), to purchase and develop real estate projects, and did so with the official assistance of Hill and Lee. Hill and Lee in turn allegedly used their official positions and influence to obtain personal benefits from these real estate projects, as to which the extent of their personal financial interests was not fully disclosed.

Specifically, Count 18 alleges that Hill agreed to use his official position and influence

on the City Council and the Dallas Police and Fire Pension System ("DPFP") Board of Trustees to promote and advance the financial interests of Lee, Spencer, and Slovacek, by seeking for The LKC and Kiest Blvd. the following: (1) authorization of a Residential Development Acquisition Loan Program loan from the City of Dallas (the "City"); (2) award of local bond funds from the City; (3) award of earmark appropriations from the federal government; (4) award of private grant funds from private foundations; (5) creation of a tax increment financing district; (6) approval of investment funding from a local pension fund; and (7) waiver of a locally-required development impact study. Hill allegedly did these acts in exchange for things of value, including cash payments and kickbacks on sham consulting agreements.

Count 18 also alleges that Lee helped create Kiest General and Kiest Blvd., met with bankers to secure loans for Kiest Blvd.'s projects at The LKC office, directed that all communications with The LKC's clients go through Lee, investigated and attempted to further various business prospects for Kiest Blvd. and The LKC, and admitted that because he was on the CPC, his role in these entities was a "hidden partner." The Indictment alleges that Hill told Lee that the DPFP System "would not allow Lee to make $1 million off of the [real estate] purchase," which Lee was working to secure for Kiest Blvd. Lee also allegedly used his official position on the CPC to advance his interests by threatening a property owner with "official action to coerce the sale of privately-held property to The LKC at a favorable price," namely threatening to use "code enforcement" against the landowner if he did not sell the property at a specific price. Count 18 further alleges that both Hill and Lee concealed the expected and actual receipt of things of value "by not disclosing conflicts of interest, omitting sources of income on Financial Disclosure Reports, and receiving cash payments from nominee companies," and by "funneling cash payments from The LKC to Hill and Lee through Farrington & Associates."

Counts 19-20 allege a conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), for acts from August 2004, to June 20, 2005. Count 19 names Defendants Hill, Lee, Farrington, Robertson, Spencer and Slovacek, and Count 20 names Defendants Hill, Reagan, Dean and Lewis. Count 19 incorporates the facts underlying the Bribery Counts, and alleges concealment of funds derived from the bribery alleged in Counts 11-14. Count 20 incorporates the facts underlying the Extortion Counts, and alleges a conspiracy to conceal funds derived from the unlawful extortion alleged in Counts 16-17.

Counts 21-25 name only Hodge, and allege false and fraudulent statements on her income tax returns, for the years 2001 to 2005.

Count 26 alleges tax evasion by Hill, for his "attempt to evade and defeat the payment of tax due and owing by him to the United States of America for the calendar years of 1996, 1997, and 1999 through 2004, in the total amount of $216,173.00, by: (1) failing to pay the tax to the Internal Revenue Service ("IRS"); and (2) engaging in affirmative acts of evasion," which included failing to file tax returns and allegedly laundering bribes and kickbacks through Farrington & Associates.

Counts 27-30 allege tax evasion by Reagan, for his attempt to evade and defeat income taxes owed by him for each calendar year, by failing to file income tax returns, by failing to pay to the IRS the income tax owed, and by concealing and/or attempting to conceal his true and correct income, allegedly through the improper personal use of funds from the charitable bank account of the Black State Employees Association of Texas ("BSEAT"). Reagan was the chairman and chief executive officer of BSEAT and the BSEAT Community Development Corporation. Reagan allegedly used these community organizations to create an illusion of opposition in the minority community to Developer's affordable housing projects while these

projects awaited approval from the CPC and the City Council, and then conditioned withdrawal of this sham opposition on the exchange of things of value.

Count 31 is the Forfeiture Count, relevant only upon conviction of the above Counts.

The Court must now determine whether joinder is proper under these facts as alleged.

## Standard of Review

### A. Propriety of Joinder under Rule 8

This case involves multiple Defendants and multiple Counts, so FED. R. CRIM. P. 8(b) is what this Court must first analyze.[9] Rule 8(b) requires the trial court to determine the propriety of joinder of *defendants*, by looking to the *substance of the counts* in the indictment, and whether the defendants are alleged to have participated in the same act or transaction, or same series of acts or transactions.[10]

The United States Supreme Court has instructed federal courts to interpret the requirements of joinder under Rule 8 liberally, stating:

> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials "play a vital role in the criminal justice system[.]" They promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."[11]

Rule 8(b) is designed to promote judicial economy and efficiency and to avoid a multiplicity of trials, but only so long as these objectives can be achieved without substantial prejudice to the

---

[9] *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988).

[10] FED. R. CRIM. P. 8(b).

[11] *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (citation omitted); *see also United States v. Robichaux*, 995 F.2d 565, 569 (5th Cir. 1993) ("[R]ule 8 is to be broadly construed in favor of initial joinder."). *But see United States v. Ellender*, 947 F.2d 748, 754 (5th Cir. 1991) ("Exceedingly long trials impose substantial burdens on the trial court, attorneys, defendants, support personnel, and particularly on jurors. Indeed, this case required the services of numerous court-appointed counsel, many of whom were drawn away for an extended period from other clients and matters, and who sat silently while awaiting some reference to their respective clients. Significant additional costs were incurred in the modification of the courtroom and the installation of 'temporary' furnishings. Many in the room were relegated to plank-type bleachers, suitable perhaps for enjoying an afternoon of football, but of questionable propriety for a protracted trial. While sizable joint trials may be an efficient use of judicial resources, and may promote the interests of justice, these are not the only yardsticks by which a decision to allow a megatrial must be measured.").

right of the defendants to a fair trial.[12]  The Supreme Court has recognized that joint trials conserve funds, reduce inconvenience to witnesses and public authorities, and avoid delays in bringing the accused to trial, and Rule 8 accommodates these interests while protecting against prejudicial joinder.[13]  The Supreme Court warned that when individuals conspire with others, they invite mass trial by their conduct.[14]  "Indeed, the circumstance that one has chosen odious associates seems a dubious sword."[15]

Rule 8(b) requires defendants to be charged with participating in the "same act or transaction" or "same series of acts or transactions."  However, the Rule does not require that each defendant have participated in the same act or acts; all that is required is "a series of acts unified by some substantial identity of facts or participants."[16]  Rule 8's requirement is ordinarily satisfied by the allegation of an overarching conspiracy that encompasses the substantive offenses charged in the indictment.[17]  It is well settled that a charge of conspiracy initially legitimizes joinder of all defendants,[18] as the conspiracy charge provides a "common link" and demonstrates that the charges arise from or "grow out of" the same acts or transactions.[19]  However, the government is not *required* to allege a conspiracy in order to join defendants or counts—"what is required is a series of acts unified by some 'substantial identity of facts or

---

[12] *Zafiro*, 506 U.S. at 540.

[13] *United States v. Lane*, 474 U.S. 438, 449 (1986) (citing *Bruton v. United States*, 391 U.S. 123, 134 (1968)).

[14] *Kotteakos v. United States*, 328 U.S. 750, 773 (1946).

[15] *United States v. Harrelson*, 754 F.2d 1153, 1175 (5th Cir. 1985).

[16] *United States v. Krenning*, 93 F.3d 1257, 1266 (5th Cir. 1996) (citing *United States v. Lindell*, 881 F.2d 1313, 1318 (5th Cir. 1989) ("The fact that an indictment does not charge each appellant with active participation in each phase of the conspiracy does not constitute misjoinder.")).

[17] *United States v. Krout*, 66 F.3d 1420, 1429 (5th Cir. 1995); *Ellender*, 947 F.2d at 754 ("Joinder of defendants is particularly appropriate when conspiracy is one of the charges."); *see also United States v. Hundley*, No. S3-02-CR-441, 2003 WL 21537774, at *2 (S.D.N.Y. July 7, 2003) ("the indictment can also be read as alleging that these defendants were engaged in a broad scheme to enrich themselves and their associates by any fraudulent means required").

[18] *United States v. Elam*, 678 F.2d 1234, 1247 (5th Cir. 1982); *United States v. Phillips*, 664 F.2d 971, 1016 (5th Cir. 1981) ("It is well settled that joinder under Rule 8(b) is proper where an indictment charges multiple defendants with participation in a single conspiracy and also charges some but not all of the defendants with substantive counts arising out of that conspiracy.").

[19] *United States v. DeLeon*, 641 F.2d 330, 337 (5th Cir. 1981).

participants.'"[20]

In fact, if the indictment's allegations, assumed to be true by the court, establish a single conspiracy, there cannot be "inherent prejudice" to the defendants in a joint trial.[21] To determine whether an indictment charges separate conspiracies or a single conspiracy, a court must decide whether the facts as alleged "reveal a substantial identity of facts or participants," and the court should hold that a single conspiracy exists when the indictment adequately demonstrates a singular conspiratorial objective.[22] The focus is on the "dimensions of the alleged illegal agreement to pursue a common purpose or goal or to achieve various objectives."[23]

The Fifth Circuit looks to the following factors in considering a claim of singular versus multiple conspiracies:

> (1) the time frame; (2) the locations of the events charged as part of the conspiracy; (3) the persons acting as co-conspirators; (4) the statutory offenses charged in the indictment; and (5) the overt acts or other description of the offense charged that indicate the nature and scope of the activity that the government seeks to punish in the case.[24]

The indictment need not charge every defendant with active participation in each phase of the conspiracy,[25] but overlapping membership in various activities may indicate a "single continuing plan or scheme."[26] "Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of

---

[20] *United States v. Dennis*, 645 F.2d 517, 520 (5th Cir. 1981).

[21] *United States v. Grassi*, 616 F.2d 1295, 1302 (5th Cir. 1980).

[22] *Lindell*, 881 F.2d at 1318 (where the conspiratorial objective was a large-scale narcotics transaction); *see also Krenning*, 93 F.3d at 1266-67 (where "the indictment did not allege multiple conspiracies, but rather a single scheme with multiple purposes").

[23] *United States v. Erwin*, 793 F.2d 656, 662 (5th Cir. 1986).

[24] *Ellender*, 947 F.2d at 759.

[25] *Lindell*, 881 F.2d at 1318; *Elam*, 678 F.2d at 1246-47 ("for the purpose of determining whether a single conspiracy exists, a common plan does not become several plans simply because some members are cast in more vital roles than others or because certain members perform only a single, minor function").

[26] *DeLeon*, 641 F.2d at 334; *but see United States v. Welch*, 656 F.2d 1039, 1049 (5th Cir. 1981) ("It is clear that defendants charged with two separate albeit similar conspiracies having one common participant are not, without more, properly joined.").

membership."[27]  Importantly, mere absence of particular defendants, even from entire episodes or whole phases of an alleged conspiracy, does not constitute misjoinder.[28]

Nor is it necessary that the indictment charge that a defendant knew, or knew of, all the participants in the conspiracy, or details of the conspiracy, so long as it alleges knowledge of the conspiracy's *essential nature*.[29]  "[W]here it is shown that a single 'key man' was involved in and directed illegal activities, while various combinations of other defendants exerted individual efforts toward a common goal, a finding of the existence of a single conspiracy is warranted."[30]  If the indictment sufficiently alleges a "concert of action unified by a common purpose," then it is proper to characterize the allegations as a single conspiracy.[31]  The Fifth Circuit explained:

> Where the *activities of one aspect of the scheme are necessary or advantageous to the success of another aspect* of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where the character of the property involved or the nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred.

If multiple separate conspiracies are alleged in one indictment, a court's inquiry into the propriety of joinder must go one step further.  Then, the trial court must focus on whether the alleged conspiracies are part of the same series of acts or transactions, even if they do constitute separate conspiracies.[32]  The Fifth Circuit has held that joinder of defendants under Rule 8(b) is proper "where the record, examined broadly, presents two conspiracies substantially interrelated

---

[27] *Grassi*, 616 F.2d at 1303.
[28] *See United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993).
[29] *Lindell*, 881 F.2d at 1318 (emphasis added); *Elam*, 678 F.2d at 1246 ("We do not imply that the various members of a conspiracy which functions through a division of labor must have an awareness of the existence of the other members, or be privy to the details of each aspect of the conspiracy").
[30] *Lindell*, 881 F.2d at 1318; *Elam*, 678 F.2d at 1247 ("Despite the fact that many of the co-conspirators each performed discrete tasks, and may even have been totally unaware of the precise roles played by other members of the criminal enterprise, the jury could have reasonably found that there was a single conspiracy in existence").
[31] *Elam*, 678 F.2d at 1246.
[32] *Welch*, 656 F.2d at 1049.

by their facts and participants."[33]  In fact, *separate conspiracies* even with *different memberships* may be joined together in one indictment if they are part of the "same series of acts or transactions" so as to satisfy Rule 8(b).[34]  The Fifth Circuit has held that:

> Whether the counts of an indictment fulfill the "same series" requirement is determined by examining "*the relatedness of the facts underlying each offense....* [W]hen the facts underlying each offense are so closely connected that *proof of such facts is necessary to establish each offense*, joinder of defendants and offenses is proper." When there is no "substantial identity of facts or participants between the two offenses, there is no 'series' of facts under Rule 8(b)."[35]

The Fifth Circuit has repeatedly approved of joinder of multiple counts and defendants under the umbrella of an "overarching" or "broad" conspiracy.[36]  In the instant case, the Government asserts that the "test" for measuring proper joinder is the realization that every charged Defendant, regardless of how charged, engaged in an overarching scheme "[t]o give, withhold, or receive official governmental acts and influence with respect to affordable housing tax credit projects in Dallas in exchange for money and property to [sic] which the participants in the conspiracy were not entitled to receive, and to conceal the illegal nature of their conduct."

### B.  Rule 14 Severance as Relief from Prejudicial Joinder

Rule 14 differs from Rule 8 in application and standard of review.  Rule 14 provides the trial court with flexibility in its management of the case when a joint trial may appear to risk

---

[33] *United States v. Kaufman*, 858 F.2d 994, 1003 (5th Cir. 1988); *United States v. Toro*, 840 F.2d 1221, 1238 (5th Cir. 1988) ("We have held that separate conspiracies with different memberships may be joined if they are part of the same series of acts or transactions… Examined broadly, the record presents two conspiracies substantially interrelated by their facts and participants, rather than two separate and distinct conspiracies.").

[34] *Harrelson*, 754 F.2d at 1176; *Grassi*, 616 F.2d at 1303.

[35] *Harrelson*, 754 F.2d at 1176-77 (citations omitted) (emphasis added); *Welch*, 656 F.2d at 1049; *United States v. Gentile*, 495 F.2d 626, 630 (5th Cir. 1974).

[36] *See, e.g., Krenning*, 93 F.3d at 1266-67 (where the court found that "the indictment did not allege multiple conspiracies, but rather a single scheme with multiple purposes;" evidence underlying the counts was relevant to an "overall scheme to defraud"); *Kaufman*, 858 F.2d at 1003 (where the court found a "general conspiracy to import and profit from the trafficking of marijuana," and allowed joinder of two counts under the umbrella of a "single overarching conspiracy" because one importation conspiracy could be viewed as a "contingency plan" in relation to the other importation conspiracy); *Dennis*, 645 F.2d at 520-21 (where the court found a "basic plan" that connected multiple transactions underlying the separate counts in the indictment, despite the fact that the government did not charge a conspiracy in the indictment to connect the separate counts).

creating prejudice to a party.[37]   As a result, severance under Rule 14 is based on the trial court's

discretion.[38]   In contrast, Rule 8(b) "*requires* the granting of a motion for severance unless its

standards are met, even in the absence of prejudice."[39]

     In deciding a Rule 14 motion for severance, the trial court must "balance the right of the

defendant to a fair trial, keeping in mind the possibility of prejudice in a joint trial, against the

public's interest in efficient and economic administration of justice, and sever defendants as the

needs of justice dictate."[40]   When defendants are properly joined under Rule 8, the court should

only grant severance under Rule 14 if a joint trial would compromise a *specific legal right* of one

of the defendants, or prevent the jury from making a reliable determination of guilt or

innocence.[41]   The court should evaluate whether the members of the jury can individualize each

defendant in relation to the other joined defendants.[42]   The Fifth Circuit, in *United States v.

Welch*, provided a test for discretionary severance under Rule 14:

> …[T]he burden is upon the defendant to show clear prejudice. The general test is:
> (W)hether [sic] under all the circumstances of the particular case, as a practical
> matter, it is within the capacity of the jurors to follow the court's admonitory
> instructions and accordingly to collate and appraise the independent evidence
> against each defendant solely upon that defendant's own acts, statements and
> conduct. In sum, can the jury keep separate the evidence that is relevant to each
> defendant and render a fair and impartial verdict as to him? If so, though the task
> be difficult, severance should not be granted.[43]

     The general rule is that persons indicted together should be tried together, especially in

conspiracy cases.[44]   Consequently, the bar is high for defendants requesting severance under

Rule 14.  The Fifth Circuit has held that a quantitative disparity in the evidence "is clearly

---

[37] *Lane*, 474 U.S. at 440 n.12.
[38] *Zafiro*, 506 U.S. at 538-39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").
[39] *Id.*
[40] *Phillips*, 664 F.2d at 1016 (citing *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976)).
[41] *Zafiro*, 506 U.S. at 539.
[42] *Phillips*, 664 F.2d at 1017.
[43] *Welch*, 656 F.2d at 1053-54.
[44] *Pofahl*, 990 F.2d at 1483.

insufficient in itself to justify severance."[45]  Also, the mere presence of a spillover effect does not ordinarily require severance.[46]  In fact, to prevail based on the prejudicial spillover of evidence, a defendant must show that "a miscarriage of justice looms."[47]

If the trial court denies a defendant severance under Rule 14, reversal is warranted only if the appellant can demonstrate *compelling prejudice* against which the trial court was unable to afford protection, such as providing limiting instructions to the jury.[48]  The district court in *Dillard* explained:

> [W]hen one conspiracy exists, severance is not required, even where the quantum and nature of the proof in each case is different, so long as the trial court repeatedly gives cautionary instructions.  Indeed, "[i]f the jury can keep separate the evidence that is relevant to each defendant, *even if the task is difficult*, and render a fair and impartial verdict as to each defendant, a severance should not be granted."[49]

Ordinarily, traditional safeguards will remedy the risk of prejudice from joinder.[50] The Supreme Court observed that "[w]hen the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but… less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."[51]  Other procedural safeguards include:

> (i) clear rulings on admissibility, (ii) limitations of the bearing of evidence as against particular individuals, and (iii) adequate instructions. The [Supreme] Court emphasized that these are "extremely important * * * safeguards (which must) be made as impregnable as possible."[52]

However, the trial court cannot simply presume that prejudice will result, without

---

[45] *Id.*
[46] *Id.*
[47] *United States v. Dillard*, No. 5:07cr17-DCB-JCS, 2007 WL 3326833, at *3 (S.D. Miss. Nov. 6, 2007) (citing *United States v. Ramirez*, 145 F.3d 345, 355 (5th Cir.1998)).
[48] *Id.*
[49] *Dillard*, 2007 WL 3326833, at *4 (citations omitted) (emphasis added).
[50] *Zafiro*, 506 U.S. at 539.
[51] *Id.*
[52] *United States v. Perez*, 489 F.2d 51, 66 (5th Cir. 1974) (citing *Blumenthal v. United States*, 332 U.S. 539, 559 (1947)).

requiring the defendant to identify *specific prejudice* that will result from continued joinder. "To say that the jury *might* have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions."[53] The Defendants in the case at hand assert a number of claimed bases for prejudice: the spillover effect of large quantities of evidence; potential violations of the Confrontation Clause through the use of out-of-court statements by co-conspirators; the presence of antagonistic defenses at trial; and the use of evidence that would be inadmissible or irrelevant in a separate trial (each addressed in greater detail below).

### 1. *Spillover Effect*

Criminal defendants indicted and tried together often claim prejudice resulting from the spillover effect; that is, prejudice that may result from the introduction of evidence at trial relating to co-conspirators that is irrelevant to a particular defendant, such as evidence of the co-defendants' other crimes or bad conduct. The concern is that such evidence spills over to the other defendant and is improperly weighed against him.[54] However, the Fifth Circuit has held that the mere presence of a spillover effect does not require severance,[55] and also that evidence of the bad reputation or past crimes of a co-defendant does not ordinarily justify severance.[56]

---

[53] *United States v. Harris*, 458 F.2d 670, 673-74 (5th Cir. 1972) (emphasis added).

[54] *See, e.g.*, *Ellender*, 947 F.2d at 753. In *Ellender*, the two appellants and twenty-one other defendants were tried together on charges of conspiracy to import over one million pounds of marijuana in four drug operations. The criminal trial lasted three months, and seventy-three witnesses testified. Appellants argued that "they were prejudiced by the 'spill-over' effect of the evidence presented against their co-defendants, which they claim was not relevant to the charges brought against them." The trial court denied the appellants' motions for severance, and the Fifth Circuit affirmed, concluding that "appellants have not established the compelling prejudice necessary to succeed on this [Rule 14] claim." *See also Pofahl*, 990 F.2d at 1482; and *Harrelson*, 754 F.2d at 1174 (where "[appellant] contends that she suffered compelling prejudice by standing trial with [another defendant] because evidence relating only to him, *i.e.,* his prior criminal record, his reputation as a murderer for hire, and, in general, his extraordinarily unsavory character, 'spilled over' onto her.").

[55] *Krenning*, 93 F.3d at 1267 (5th Cir. 1996); *Krout*, 66 F.3d at 1430.

[56] *Harrelson*, 754 F.2d at 1178.

Similarly, a quantitative disparity in the *amount* of evidence offered against one defendant in relation to other co-defendants is also normally insufficient to warrant severance under Rule 14,[57] except in extreme cases where the defendant shows both a quantitative *and* a qualitative disparity in the evidence, such that limiting instructions would be ineffective.[58] *United States v. Erwin* is one example of a disparity the Fifth Circuit found to mandate severance under Rule 14, where there was "mountainous evidence" introduced at trial that did not pertain to a defendant, whose charges the Fifth Circuit characterized as being "peripherally related to those alleged against the other appellants."[59] In reversing, the Fifth Circuit found that "[t]he prejudice [the defendant] suffered from the joint trial, then, far outweighed any benefit of judicial economy."[60]

However, the Fifth Circuit generally finds that the spillover problem is remediable by limiting instructions, explaining: "The pernicious effect of cumulation... is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the Government."[61] For example, in *United States v. Phillips*, the Fifth Circuit held that the trial court adequately protected against any potential spillover effect by specifically instructing the jury to consider each offense separately, and each defendant individually.[62] In *Phillips*, the defendant was named in only nineteen of the four hundred and seven overt acts and in six of the thirty six counts in the indictment, and the testimony pertaining to him only appeared on one

---

[57] *Pofahl*, 990 F.2d at 1482 (where the defendant filed a Rule 14 motion to sever, claiming unfair prejudice due to "the sheer number of defendants and counts in the indictment, the complexity and interrelatedness of issues, and the maze of evidentiary problems." The defendant argued that the "amount of evidence offered against him was far less than the evidence offered against his co-defendants," but the Fifth Circuit held that a quantitative disparity in the evidence "is clearly insufficient in itself to justify severance.").

[58] *Harrelson*, 754 F.2d at 1175 ("In quantitative terms, the amount of evidence offered against [appellant] was minimal compared to that offered against [co-defendant]. This is clearly insufficient in itself to justify severance (citation omitted); a qualitative disparity must be shown as well.").

[59] *Erwin*, 793 F.2d at 666.

[60] *Id.*

[61] *Harrelson*, 754 F.2d at 1175 (citations omitted).

[62] *Phillips*, 664 F.2d at 1017.

hundred twenty of the twelve thousand pages of trial testimony,[63] but the Fifth Circuit still found joinder to be proper.

## 2. Confrontation Clause

The Confrontation Clause of the Sixth Amendment provides that: "In all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him."[64] The United States Supreme Court has deemed this fundamental right[65] a "bedrock procedural guarantee,"[66] which precluded the use of certain out-of-court statements that the defendant could not later attack at trial. The Supreme Court originally conditioned the admissibility of out-of-court statements on whether they fell under a "firmly rooted hearsay exception" or had "particularized guarantees of trustworthiness."[67] However, the Supreme Court retreated from this approach as applied to *testimonial* out-of-court statements in *Crawford v. Washington*. The Supreme Court stated:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and *as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.* Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability [of the witness] and a prior opportunity for cross-examination [of the witness].[68]

Although it did not provide a comprehensive definition of "testimonial," the Supreme Court noted in a footnote that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[69] Some lower courts have interpreted *Crawford* to require an "official" element to find a "testimonial

---

[63] *Id.* at 1017 n.68.
[64] U.S. CONST. AMEND. VI.
[65] *Pointer v. Texas*, 380 U.S. 400, 403 (1965).
[66] *Crawford v. Washington*, 541 U.S. 36, 42 (2004).
[67] *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).
[68] *Crawford*, 541 U.S. at 68 (emphasis added).
[69] *Id.* at 68 n.10.

statement."[70]

Non-testimonial statements are governed by the Federal Rules of Evidence and rules concerning reliability, rather than the Confrontation Clause.[71] The Fifth Circuit has held that "[s]tatements made between co-conspirators in furtherance of a conspiracy are *not testimonial*."[72] Such statements "are by their nature generally nontestimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination."[73] Despite the fact that these statements are typically made out-of-court and would otherwise constitute inadmissible hearsay, Federal Rule of Evidence 801 provides: "A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."[74] Prior to *Crawford*, the Supreme Court, in addressing this co-conspirator exception to the hearsay rule, found it "firmly enough rooted in our jurisprudence that, under this Court's holding in *Roberts,* a court need not independently inquire into the reliability of such statements."[75]

The rationale for the co-conspirator exception "is the notion that conspirators are partners in crime… As such, the law deems them agents of one another. And just as the declarations of an agent bind the principal only when the agent acts within the scope of his authority, so the declaration of a conspirator must be made in furtherance of the conspiracy charged in order to be

---

[70] *See, e.g., Guilbeau v. Cain*, No. 05-1399, 2007 WL 2478888, at *8 (W. D. La. July 31, 2007) (unpublished) (where court held that statements were non-testimonial because they were not made to the police or in the course of an official investigation); *United States v. Savoca*, 335 F. Supp. 2d 385, 392 (S.D.N.Y. 2004) (where court held that statements were non-testimonial because they were made to an acquaintance who had no connection to any law enforcement official or proceeding and they were not formal statements made to a government official).

[71] *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005) ("With respect to nontestimonial statements, however, *Crawford* leaves in place the *Roberts* approach to determining admissibility," i.e. "whether the statement falls within a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness."); *see also United States v. King*, 541 F.3d 1143, 1145 (5th Cir. 2008) ("*Crawford* only bars out-of-court statements that are testimonial.").

[72] *King*, 541 F.3d at 1145-46 (citing *Crawford*, 541 U.S. at 56) (emphasis added); *see also Holmes*, 406 F.3d at 348.

[73] *Holmes*, 406 F.3d at 348.

[74] FED. R. EVID. 801(d)(2)(E).

[75] *Bourjaily v. United States*, 483 U.S. 171, 183 (1987).

admissible against his partner."[76]  Therefore, at least in the Fifth Circuit, if prior to its admission the Government demonstrates that an out-of-court statement was made (1) by a co-conspirator, (2) during the course of the conspiracy, and (3) in furtherance of the conspiracy, then the limitations of the Confrontation Clause will not apply to the statement's admissibility as to all co-conspirators.[77]

The existence of a conspiracy, and therefore the admissibility of proffered out-of-court statements, is a preliminary determination made by the Court under Federal Rule of Evidence 104.[78]  As the Supreme Court has expressed, "there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy."[79]  The Fifth Circuit has elaborated on the process for determining admissibility, explaining that "[i]n order to admit a coconspirator's declaration in this circuit the district judge must first determine that there is substantial, independent evidence of a conspiracy.  In the alternative, he may admit the statement subject to its being connected up."[80]  This evidentiary determination is often referred to as a "*James determination*" or a "*James hearing*."  In *United States v. James*, the Fifth Circuit explained that "although the phrase 'in furtherance of the conspiracy' has a talismanic ring to it, it must not be

---

[76] *Anderson v. United States*, 417 U.S. 211, 219 n.6 (1974).

[77] *See Bourjaily*, 483 U.S. at 183 (citing *Delaney v. United States*, 263 U.S. 586, 590 (1924), for the proposition that "there can be no separate Confrontation Clause challenge to the admission of a co-conspirator's out-of-court statement.").  Of course, if the statement is not offered "to prove the truth of the matter asserted," then it will not constitute hearsay in the first instance, and the requirements of the co-conspirator exception need not be met.

[78] *See id.* at 175 ("Before admitting a coconspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy.' Federal Rule of Evidence 104(a) provides: 'Preliminary questions concerning ... the admissibility of evidence shall be determined by the court.' Petitioner and the Government agree that the existence of a conspiracy and petitioner's involvement in it are preliminary questions of fact that, under Rule 104, must be resolved by the court.").

[79] *Id.* at 180.

[80] *United States v. Peacock*, 654 F.2d 339, 349 n.1 (5th Cir. 1981) (overruled in part, only as to applicability of forfeiture to proceeds of racketeering activity) (citation omitted).

applied too strictly or the purpose of the exception would be defeated."[81]  For example, the Fifth

Circuit has held that statements (1) identifying a fellow conspirator,[82] (2) concerning instructions

and details of the criminal transaction,[83]  (3) informing others of the conspiracy's success,[84] and

(4) discussing a co-conspirator's danger to others,[85] all qualify as being "in furtherance" of the

alleged conspiracy.  However, statements made in idle conversation between co-conspirators are

not admissible under Rule 801(d)(2)(E).[86]  An example of this distinction comes from *James*,

where, in response to another conspirator's question regarding why two people were present, a

co-conspirator stated that they were acting as lookouts for the police.  The Fifth Circuit found

that these statements were not mere conversation, but qualified as statements made "in

furtherance of the conspiracy," because the speaker was acting "in the interests of the

conspiracy" by allaying a co-conspirator's suspicions about the presence of the other persons.[87]

 Additionally, to succeed on a claim that the Confrontation Clause is being violated, the

defendant must also demonstrate that a particular statement is being offered "against" him at

trial.[88]  In *United States v. Harper*, the Fifth Circuit interpreted *Crawford* to limit the application

of the Confrontation Clause to witnesses *against* the accused, or to those who "bear testimony"

against the accused, stating:

---

[81] *United States v. James*, 510 F.2d 546, 549 (5th Cir. 1975) (citing *United States v. Patton*, 594 F.2d 444, 447 (5th Cir.1979) and E. Cleary, *McCormick On Evidence* 793 (3rd ed.1984), for the proposition that "literally applied, the 'in furtherance' requirement calls for general exclusion of statements possessing evidential value solely as admissions, yet in fact more emphasis seems to be placed upon the 'during continuation' aspect and any statement so qualifying in point of time may be admitted in evidence without much regard to whether it in fact furthered the conspiracy").
[82] *Lindell*, 881 F2d at 1320.
[83] *United States v. Galindo*, No. 07-50316, 2007 WL 4015308, at *6 (5th Cir. Nov. 16, 2007) (unpublished).
[84] *Peacock*, 654 F.2d at 350.
[85] *Id*.
[86] *Phillips*, 664 F.2d at 1027 (citing *James*, 510 F.2d at 549).
[87] *James*, 510 F.2d at 549-50.  The suspicious co-conspirator was actually a government agent, but the Fifth Circuit focused on the speaker's perception of the agent's involvement in the crime, finding that the speaker considered the agent to be a full-fledged partner in the crime, and therefore his statements allaying her fears were made in furtherance of the criminal conspiracy even if the agent was not actually a member of the conspiracy.
[88] *United States v. Harper*, 527 F.3d 396, 402 (5th Cir. 2008).

> Ordinarily, a witness is considered to be a witness "against" a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt… [O]rdinarily, *a witness whose testimony is introduced at a joint trial is not considered to be a witness "against" a defendant if the jury is instructed to consider that testimony only against a codefendant*.[89]

The Fifth Circuit went on to explain that:

> Out-of-court statements of a non-testifying witness that only *inferentially incriminate a defendant when linked to other evidence* introduced at trial do not violate the Sixth Amendment because an instruction not to consider such a statement will be considered effective to remove it from the jury's consideration. But statements that obviously incriminate a defendant, involve an inference that a jury could make *immediately without hearing other evidence*, and that a judge could easily predict prior to trial, before hearing any evidence, would be barred under the rationale of *Bruton,* do violate the Confrontation [C]lause.[90]

The court's focus should be on the "kind of" inference, not "the simple fact of, [an] inference" when deciding if a particular statement violates the Confrontation Clause.[91]  For example, in *Harper*, the district court allowed the government to introduce statements made by one defendant admitting ownership of weapons and narcotics found by police in the house, over the objections of his co-defendant, but instructed the jury not to consider these statements against the objecting co-defendant.  The Fifth Circuit found that admission of these statements did not violate the Sixth Amendment, because they "did not directly or obviously implicate [the objecting co-defendant] … until other evidence, such as the fact that [the objecting co-defendant] … lived in the same house as [the speaker]… was introduced."[92]  These statements did not facially incriminate the co-defendant, and did not refer to the existence of the co-defendant, or of any other person.[93]  Since the alleged inculpation from the out-of-court statements led to an *indirect* inference, one that required other evidence to link the co-defendant to the statements, then a

---

[89] *Id.* at 401-02 (citations omitted) (emphasis added).
[90] *Id.* at 403 (emphasis added).
[91] *Id.* at 405.
[92] *Id.* at 406.
[93] *Id.* at 405.

limiting instruction was likely "successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget."[94]

In short, to present a viable Confrontation Clause claim, and thereby demonstrate specific prejudice to warrant severance under Rule 14, a defendant must demonstrate the anticipated use of (1) *testimonial* statements, (2) offered *directly against* the defendant, where (3) the declarant is unavailable for cross-examination. Of course, non-testimonial statements may still be objected to under the Federal Rules of Evidence.

### 3. Antagonistic Defenses

One defendant in a joint trial with multiple defendants may be able to show specific prejudice by demonstrating that he plans to present at trial a defense antagonistic to that of some or all of his co-defendants. However, "[t]o justify severance ... the defenses must be more than merely antagonistic; they must be irreconcilable and mutually exclusive."[95] For example, in *United States v. Kaufman*, the Fifth Circuit held that the use of an entrapment defense by other co-defendants did not impair the appellants' ability to receive a fair trial when their defense was premised on lack of participation in the conspiracy, because the other defendants "may have admitted being part of a conspiracy, [but] it does not follow that the jury would have been required to exclude the defense of [appellants] that they were not part of that conspiracy."[96]

In *United States v. Matthews*, the Fifth Circuit also noted that even when co-defendants

---

[94] *Id.* at 406-07. The Fifth Circuit did caution in *Harper* that it would have been better to keep one particular statement from the jury, where the speaker stated he was unaware of drugs that were found in the microwave in his home, as this statement "obliquely refer[red] to the existence of someone else," and thereby came closer to directly implicating the co-defendant, who lived with the speaker. However, the court still found that the district court could properly assume that the jury, as instructed, did not use the statements against the objecting co-defendant, and properly admit the statement.

[95] *Kaufman*, 858 F.2d at 1004 (citing *Toro*, 840 F2d at 1238).

[96] *Id.*; *see also Toro*, 840 F.2d at 1238 (where the appellant denied participation in the conspiracy but his co-defendant used an entrapment defense, the Fifth Circuit explained that, in order for the two defenses to be antagonistic, "we must find that if the jury could believe that [the co-defendant] was entrapped, then it could not believe that [appellant] was not guilty," in other words, that the jury's belief of one defense would make it impossible for the jury to believe the other defense).

present mutually antagonistic defenses, severance is not automatically required.[97]  In *Matthews*,

the co-defendants accused each other of shooting the victim, so "each [d]efendant's defense

strategy was to implicate the other."  The appellant argued that "he was 'facing an extra

prosecutor' in [co-defendant's] attorney which resulted in severe prejudice requiring a

severance."[98]  The Fifth Circuit held that "[a]ssuming without deciding that the Defendants'

defenses were mutually antagonistic, the court's limiting instructions were sufficient to cure any

prejudice."[99]  The Fifth Circuit explained that because mutually antagonistic defenses are not

prejudicial *per se*, Rule 14 allows the district court to tailor whatever remedy may be necessary

to alleviate the risk of prejudice, and the district court did not abuse its discretion in allowing the

joint trial and instructing the jury to consider each count and each defendant separately.[100]

As a result, to succeed on a motion to sever based on the likelihood of antagonistic

defenses at trial, Defendants must show that their defenses are "irreconcilable and mutually

exclusive," so that if the jury believes one defense, it cannot conceivably believe the other

defenses, and that the potential prejudice caused by such varying defenses cannot be cured by a

limiting instruction.

### 4.  Admissibility of Evidence in Separate Trial

The United States Supreme Court explained in *Zafiro v. United States* that:

> [W]hen defendants properly have been joined under Rule 8(b), a district court
> should grant a severance under Rule 14 only if there is a serious risk that a joint
> trial would compromise a specific trial right of one of the defendants, or prevent
> the jury from making a reliable judgment about guilt or innocence. Such a risk
> might occur when evidence that the jury should not consider against a defendant
> and that would not be admissible if a defendant were tried alone is admitted
> against a codefendant.[101]

---

[97] *United States v. Matthews*, 178 F.3d 295, 299 (5th Cir. 1999) (citing *Zafiro,* 506 U.S. at 538-39).
[98] *Id.* at 298.
[99] *Id.* at 299.
[100] *Id.*
[101] *Zafiro*, 506 US at 539.

The Supreme Court provided three examples of when such specific prejudice might occur: (1) where "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty;" (2) where "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant" is admitted; and (3) if "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial."[102]  To prevail under Rule 14, a defendant must demonstrate that such evidence is expected to be introduced, and that any prejudice resulting therefrom will be incurable by a limiting instruction.

<u>Analysis</u>

1. **Defendant Hodge's Motion for Relief from Misjoinder Under Rule 8 and Prejudicial Joinder Under Rule 14**

The Court now addresses the first issue, raised in Hodge's Motion for Relief from Misjoinder, of whether Counts 10 and 15 are sufficiently related to Counts 1-9 and Counts 21-25 for a joint trial.  The Court finds that Counts 1-9 and Counts 21-25 do not allege participation by Hodge and the Potashniks in the same or series of act(s) or transaction(s), as are the core of the remaining Counts, as required by Rule 8(b), and therefore must be severed.

Hodge argues that joinder of Counts 1-9 and 21-25 with those pertaining solely to the other Defendants is improper under Rule 8(b), or in the alternative, prejudicial to her under Rule 14, thereby warranting severance of the entire case against her from the other Defendants.  Rule 8(b) requires the Court to determine the propriety of joinder of multiple *defendants*, by looking to the substance of the *counts* in an indictment.

---

[102] *Id.*

The issue of misjoinder under Rule 8 is a matter of law for the Court.[103]  In *United States v. Welch*, the Fifth Circuit examined the propriety of joining multiple defendants charged with separate and distinct conspiracies, and explained that under Rule 8(b), "[s]eparate conspiracies with different memberships may still be joined if they are part of the same series of acts or transactions."[104]  The Court is to analyze "the relatedness" of the facts underlying each offense, and determine if they are "so closely connected that proof of such facts is necessary to establish each offense," so that joinder of the defendants and of the offenses is proper.[105]  However, *similarity* of the acts, by itself, is insufficient to prove that a "series" of acts exists.[106]

Counts 1-9 and 21-25 are not part of the same or series of act(s) or transaction(s), as the remaining Counts.  Count 1 alleges a conspiracy to commit bribery concerning a state government receiving federal benefits, in violation of 18 U.S.C. § 371.  Counts 2-9 include the substantive offenses relating to this conspiracy charge, namely bribery concerning a state government receiving federal benefits and aiding and abetting, from 2001 to 2004.  The facts underlying these charged offenses relate to payments allegedly made by the Potashniks toward Hodge's rent, utility bills, and carpet installation at a home she owned, in exchange for support of their housing developments by Hodge in her official capacity as a State Representative.

Counts 10-14 allege a conspiracy to commit bribery concerning a local government receiving federal benefits, in violation of 18 U.S.C. § 371, and the substantive offenses relating to this conspiracy charge, namely bribery concerning a local government receiving federal benefits and aiding and abetting, from 2003 to 2004.  The facts underlying these charged offenses relate to the Potashniks' alleged payment of bribes to Dallas City Councilman Hill and

---

[103] *Welch*, 656 F.2d at 1049.
[104] *Id.* (citing *Grassi*, 616 F.2d at 1303).
[105] *See id.* (citing *Gentile*, 495 F.2d at 630).
[106] *Id.*

Dallas City Plan and Zoning Commissioner Lee, through false invoices submitted under sham consulting agreements, in exchange for Hill and Lee's official support of their housing developments.

Counts 15-17 allege a conspiracy to commit extortion, in violation of 18 U.S.C. § 1951, and the substantive offenses relating to this conspiracy charge, namely extortion by public officials and aiding and abetting, from August 2004, to June 2005. The facts underlying these charged offenses relate to the alleged use of official acts by Hill and Lee to pressure an unindicted affordable housing developer to provide things of value in exchange for Hill and Lee's official actions, and the use of sham written agreements and front companies by Reagan, McGill, Rashad, Robertson, Spencer, Slovacek, Dean and Lewis to further and to conceal the illegal nature of these extortionate demands.

Count 18 alleges a conspiracy to commit deprivation of honest services by wire fraud. The facts underlying this Count involve the alleged use of wire communications to conceal Hill and Lee's financial interest in various real estate projects that benefited from the use of their official positions. Finally, Counts 19 and 20 charge various Defendants with conspiracy to commit money laundering, and the underlying facts involve financial transactions using the proceeds of the bribery and extortion alleged in Counts 11-14 and Counts 16-17.

Generally, each set of Counts alleges a chain of events in an overarching conspiracy to bribe public officials, or extortion by the same public officials. Counts 2-9, 11-14 and 16-17 encompass the substantive offenses underlying the conspiracies alleged in Counts 1, 10 and 15, and Counts 19-20 allege the money laundering that occurred with the proceeds from these substantive offenses. However, the *facts underlying* Counts 1-9 are unrelated to the facts underlying the remaining Counts. Mere similarity of the *acts* is not enough to prove a "series" of

acts as required by Rule 8.[107]

In *Welch*, the Fifth Circuit held that the defendants allegedly involved in two distinct gambling conspiracies, one at a farmhouse and one at a fairground, were properly joined under Rule 8(b). The indictment included a count that charged the defendants with an overarching substantive racketeering endeavor in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO).[108] The two conspiracies were charged as separate counts, but as predicate acts of the RICO charge in the indictment. The court held that:

> It is well settled that the joinder of otherwise separate acts may be allowed when the acts are properly linked by means of a conspiracy charge. The conspiracy charge can serve to provide the common nexus between the acts that is necessary in order to find that those acts are part of a series of acts or transactions.[109]

Pointing to the substantive RICO Count, the court found that "the common goal [of] conducting the affairs of the [defendants' office] by means of a pattern of racketeering provides a sufficient identity of facts to satisfy Rule 8(b)."[110]

The Government asserts that the "test" for measuring proper joinder is whether every charged Defendant, regardless of how charged, engaged in an overall scheme to "give, withhold, or receive official governmental acts and influence with respect to affordable housing tax credit projects in Dallas in exchange for money and property to [sic] which the participants in the conspiracy were not entitled to receive, and to conceal the illegal nature of their conduct." But even assuming this to be true, this Court is required to go beyond identifying one alleged overarching goal that connects each Count in the Indictment. It is simply not enough for the Government to allege bribery of public officials in exchange for support of public housing projects. The Fifth Circuit has clearly instructed courts to look also to the *facts underlying the*

---

[107] *Id.*
[108] *Id.*
[109] *Id.* at 1051.
[110] *Id.* at 1052.

*Counts*, and not solely to the nature or characterization of the Counts. For example, in *Welch*, the Fifth Circuit specifically observed that if separate trials on the challenged counts were required, "two trials *with substantially identical evidence* would have been necessitated."[111] The same cannot be said for this case.

The facts underlying Counts 1-9 are sufficiently dissimilar from the facts underlying the remaining Counts to warrant severance of Hodge and the Potashniks under Rule 8(b). Proof of the facts underlying Counts 1-9 is not "necessary to establish each offense" alleged in Counts 10 and 15. The evidence introduced to prove the alleged payment by the Potashniks of Hodge's rent and utilities and for the carpet in her home will have little or no relevance to evidence of the Potashniks' alleged payment of sham invoices to front companies to funnel bribes to Hill and Lee.[112] The inclusion of the Potashniks in Counts 1-9 as well as in Counts 10-14 is insufficient to support joinder under Rule 8(b). It is not simply similarity of the parties that this Court must look to, but also to similarity of the facts.[113]

The Government has not met the burden required by Rule 8(b). As a result, this Court is bound to order severance of Counts 1-9 and 21-25, and consequently of Hodge and the Potashniks, from the remaining Counts. Counts 1-9 will be tried separately, with Hodge and the Potashniks together in one trial. Under Rule 8(b), a joint trial of Hodge and the Potashniks on Counts 1-9 is proper because the charged conspiracy and underlying predicate acts clearly involve participation in the same series of acts and transactions by Hodge and the Potashniks, as

---

[111] *Id.* (emphasis added); *see also Krenning*, 93 F.3d at 1266-67 (where the Fifth Circuit found the indictment in question alleged a single scheme with multiple purposes, and that evidence from the distinct counts was relevant to establishing the overall criminal scheme, so joinder was proper even though each defendant was not charged in each count.).

[112] However, this decision on the propriety of joinder does not in any way constitute a ruling on the admissibility of evidence in the trials on any of the Counts charged in the Indictment.

[113] *Id.* (citing *United States v. Nettles*, 570 F.2d 547, 551 (5th Cir. 1978) ("It is clear that defendants charged with two separate albeit similar conspiracies having one common participant are not, without more, properly joined.")).

explained below in addressing the Potashniks' Joint Motion to Sever. The Court also declines to sever Hodge or the Potashniks for their own separate trials under Rule 14 because it does not find any evidence of specific prejudice arising from a joint trial on Counts 1-9, as is also explained below in addressing the Potashniks' Joint Motion to Sever.

Counts 21-25 will also be severed from the remaining Counts, as they allege false and fraudulent statements by Hodge on her income tax returns, in part due to her omission of the income received from the bribery alleged in Counts 1-9. These Counts will be tried separately from Counts 1-9, for reasons explained below.[114]

The same severance question regarding Counts 1-9 and 21-25 is also raised by Defendant Lewis's Motion to Sever Counts 15, 17, 20 and 31 from Counts 1-9, 21-25, and 27-30 [Docket Entry #335], Defendant Slovacek's Motions to Sever Counts 1-9 and 21-25 from the remaining Counts (joined by Defendant Rashad)[115] [Docket Entries #370, #374, #378], and Defendants Brian and Cheryl Potashniks' Joint Motion to Sever [Docket Entry #517]. The Court hereby **GRANTS** these Motions insofar as they request severance of Counts 1-9 and 21-25 from the remaining Counts in the Indictment.

### 2. The Potashniks' Joint Motion for Severance of Counts 1-9 and 10-14 from the remaining Counts for a separate trial

The Potashniks filed a Joint Motion for Severance, asking the Court for a separate trial of Counts 1-9 and 10-14 pursuant to Rule 8 and alternatively under Rule 14. The Potashniks argue that:

---

[114] In short, because the Government has admitted that "less than half" of the income allegedly unreported by Hodge originated from the Potashniks, at least in some measure the tax Counts are not part of the same series of acts or transactions as required by Rule 8(b), and therefore must also be severed.

[115] While the Court now severs Counts 1-9 and 21-25 as requested by Slovacek's Motions, the Court notes that Slovacek and Rashad have already been severed for separate trials under Rule 14, and therefore his severance Motions are moot.

To allow this case to be tried in its current form will not only serve to create juror confusion over which of these varying charges, unrelated facts and unconnected events apply to which defendants, but it will also prove to be an evidentiary nightmare to manage from a judicial standpoint… This type of unwieldy trial will also work to unfairly prejudice the Potashniks who have nothing to do with (and is [sic] not even mentioned in) nearly half of the charges alleged in the Indictment. Misjoinder of multiple, separate and unrelated conspiracies into a single indictment is not only prohibited under Federal Rules of Criminal Procedure 8 and 14, but it is also impracticable to try together in one case and would serve to unfairly prejudice the Potashniks.

First, while the Potashniks' Motion requests a "separate trial for Counts 1-9 and Counts 10-14," they make no actual arguments for severing their trial from Hodge on Counts 1-9. Under Rule 8(b), the Potashniks' and Hodge are properly joined, since the Indictment alleges participation in the same or a series of act(s) and/or transaction(s). The Potashniks allegedly paid portions of Hodge's rent and utilities, and for the installation of carpet at her home. In direct correlation to these actions, Hodge allegedly provided assistance in her official capacity as an elected official. These actions are clearly part of the same series of acts and/or transactions, and joinder is proper under Rule 8(b).[116] Similarly, the Potashniks fail to allege that specific prejudice would result from a joint trial with Hodge on Counts 1-9, and therefore the Court will not grant severance of the Potashniks under Rule 14.[117]

As for joinder of the remaining Counts, while the Court acknowledges the evidentiary and logistical challenges in a trial of multiple defendants on multiple counts, the Court declines to grant severance on the grounds of convenience. Counts 10-14 are part of the same series of

---

[116] The propriety of joinder may also be evidenced by the fact that the Potashniks request a separate trial on Counts 1-9, but in fact make no legal arguments that would justify such a result in this case.

[117] The Potashniks argue that the spillover effect from a single trial of 14 defendants creates a serious risk of prejudice, and that the jury would be confused by a joint trial of Counts 10, 15 and 18-20 given the quantity of evidence against the Potashniks' versus their co-defendants on "complex" allegations, but they do not allege that the same risks exist in a joint trial with Hodge on Counts 1-9. The Potashniks also fail to identify any extra-judicial statements that might violate the Confrontation Clause, that the Government intends to use in a joint trial with Hodge, which would justify severance from Hodge, and they do not allege any defenses that would be antagonistic with Hodge's defenses. As a result, the Court does not find that a separate trial of Counts 1-9 for the Potashniks is warranted under Rule 14.

acts or transactions as the remaining Counts, and joinder of them under Rule 8(b) was therefore proper. The Court also holds that the Potashniks have not shown specific prejudice under Rule 14. As a result, the Court **DENIES** the Potashniks' Motion to Sever insofar as it requests severance of Counts 1-9 for a trial separate from Hodge, and severance of Counts 10-14 from the remaining Counts and Defendants for separate trial.

## A. Propriety of Joinder under Rule 8

On January 18, 2008, this Court held, in addressing Defendants Lewis and Dean's Motions to Sever, that Counts 10 and 15 were properly joined under Rule 8. However, the Court specifically acknowledged the right of the remaining Defendants to object to misjoinder of the same Counts under Rule 8. The Court now returns to this issue, and holds that Counts 10-14 are properly joined with Counts 15-20 under Rule 8(b). The Court will analyze the propriety of joinder of the Tax Counts, Counts 21-30, later in this Opinion.

### 1. Joinder of Counts 10-14 with Counts 15-17

This Court must once more look to the substance of these Counts to determine the propriety of joinder of the Defendants.[118] The Fifth Circuit has held that Rule 8's requirement of the same or series of act(s) or transaction(s) is ordinarily "satisfied by allegation of an overarching conspiracy that encompasses the substantive offenses charged."[119] However, the government is not *required* to allege a conspiracy in order to join defendants or counts—"what is required is a series of acts unified by some '*substantial identity of facts or participants*.'"[120]

Count 10 names Defendants Hill, Lee, Farrington, Robertson, Spencer, Slovacek, and the

---

[118] *See* FED. R. CRIM. P. 8(b).
[119] *Krout*, 66 F.3d at 1429; *Ellender*, 947 F.2d at 754 ("Joinder of defendants is particularly appropriate when conspiracy is one of the charges."); *see also Hundley*, 2003 WL 21537774, at *2 ("the indictment can also be read as alleging that these defendants were engaged in a broad scheme to enrich themselves and their associates by any fraudulent means required").
[120] *Dennis*, 645 F.2d at 520 (emphasis added).

Potashniks and asserts that from October 1, 2003, through June 20, 2005, these Defendants conspired to unjustly enrich Hill and Lee in exchange for the performance of Hill and Lee's official acts to further the Potashniks' business interests. Counts 11-14 are the substantive bribery counts, alleging that Hill and Lee performed acts in their official capacities in exchange for concealed illegal payments. These Counts also allege that Hill and Lee demanded that the Potashniks award construction contracts under sham deed restrictions to the named Defendants who were associates of Hill and Lee, so that they too would profit from the scheme.

Count 15 alleges a conspiracy to commit extortion from August 2004, through June 20, 2005. Counts 16-17 allege actual extortion by public officials (and aiding and abetting by their associates), on February 22, 2005, and May 11, 2005, respectively. These Extortion Counts involve Hill and Lee conditioning their official support of another developer's tax credit projects upon compliance with their extortionate demands for cash payments and deed restrictions that provided financial benefits to their associates. These Counts name Defendants Hill, Lee, Reagan, McGill, Rashad, Robertson, Spencer, Slovacek, Dean, Lewis, and Farrington.

The Government again argues that the "test" for measuring proper joinder is "the realization that every defendant, regardless of how charged, engaged in the following scheme with the criminal intent to achieve its objective:

> To give, withhold, or receive official governmental acts and influence with respect to affordable housing tax credit projects in Dallas in exchange for money and property to [sic] which the participants in the conspiracy were not entitled to receive, and to conceal the illegal nature of their conduct."

The Potashniks argue that the Indictment actually charges multiple distinct conspiracies, and that it is improper to join them with the other Defendants in "schemes having nothing to do with the Potashniks." To determine whether an indictment charges separate conspiracies or a single conspiracy, a court must decide whether the alleged facts "reveal a substantial identity of

facts or participants… [a] single conspiracy can be found when the indictment adequately shows a singular conspiratorial objective."[121]  Here, the conspiratorial objective was for Hill and Lee (and their associates) to illegally profit from the use of their official positions to advance the interests of affordable housing developers, or conversely to hinder the interests of developers that did not comply with their demands.  Although the Indictment describes different events, each involving some but not all of the Defendants, it in fact alleges one overarching conspiracy, one global objective, to abuse the political process for approval of affordable housing projects in the City, for the personal gain of officeholders and their alleged co-conspirators, and for the benefit of businesspersons who elected to participate in the unlawful scheme.[122]

The Fifth Circuit looks to the following factors in considering whether one or multiple conspiracies exist:

> (1) the time frame; (2) the locations of the events charged as part of the conspiracy; (3) the persons acting as co-conspirators; (4) the statutory offenses charged in the indictment; and (5) the overt acts or other description of the offense charged that indicate the nature and scope of the activity that the government seeks to punish in the case.[123]

Under these factors, the Court concludes, as it did in ruling on the Dean/Lewis severance Motions, that the Indictment charges one overarching conspiracy.[124]  The acts underlying the Bribery Counts and the Extortion Counts occur during identical time periods, beginning in August of 2004, and ending on June 20, 2005.  All events took place in Dallas, Texas, with respect to housing projects located in Hill's district.  The participants charged in these Counts

---

[121] *Lindell*, 881 F.2d at 1318.

[122] *See* cases cited *supra* note 36, for examples of "broad" conspiracies found by the Fifth Circuit to support joinder under Rule 8(b).

[123] *Ellender*, 947 F.2d at 759.

[124] Under these same factors, it is also clear that Counts 1-9 are not properly joined under Rule 8(b).  The time frame for the acts underlying Counts 1-9 begins two years before the other conspiracy Counts.  The only Defendants charged in Counts 1-9 are Hodge and the Potashniks, as compared to the substantially overlapping membership in Counts 10 and 15.  However, the most significant distinction is found in the overt acts and factual descriptions of the offenses.  The facts alleged in Counts 1-9 are distinct and unrelated to those alleged in Counts 10 and 15.  *See supra* notes 107-113 and accompanying text.

overlap substantially:

> *Count Ten*: Hill, Lee, Farrington, Potashnik, Robertson, Spencer, Slovacek

> *Count Fifteen*: Hill, Lee, Reagan, McGill, Rashad, Robertson, Spencer, Slovacek, Dean, Lewis

Count 10 alleges a conspiracy to commit bribery and Count 15 alleges a conspiracy to commit extortion. Count 15 is different from Count 10 only in that the extorted Developer referenced in Count 15 stands in the same position as do the Potashniks in Count 10, except that rather than agreeing to pay the bribes in exchange for official support as the Potashniks allegedly did, the Developer refused to participate in the illegal conduct.

Finally, the Fifth Circuit directs the Court to look at the "overt acts" or other descriptions of the offense that reflect the nature and scope of the activity charged. The nature of Counts 10 and 15 is best described in the "manner and means" section of the Indictment. Count 10 alleges, in part, that:

> • *Hill and Lee would and did seek things of value for themselves in return for providing official assistance* to Brian L. Potashnik and Cheryl L. Potashnik. The things of value included cash payments in the form of birthday party contributions, cash payments in the form of gifts to CHDOs [Community Housing Development Organizations], cash payments in the form of consulting fees, and the award of construction contracts to Hill and Lee's associates, Robertson, Spencer and Slovacek.

> • *Brian L. Potashnik and Cheryl L. Potashnik would and did offer things of value to Hill and Lee to influence and reward them for their performance of official acts* that advanced Brian L. Potashnik and Cheryl L. Potashnik's business interests. The things of value included cash payments in the form of birthday party contributions, cash payments in the form of gifts to CHDOs [Community Housing Development Organizations], cash payments in the form of consulting fees, and the award of construction contracts to Hill and Lee's associates, Robertson, Spencer and Slovacek.

> • *Hill and Lee would and did conceal their expected or actual receipt of things of value* by directing their associates, including Farrington, Spencer and Slovacek, to form *nominee companies that entered into sham agreements* to receive things of value sought by Hill and Lee while neither referencing nor disclosing Hill's and Lee's involvement in obtaining the agreements. The nominee companies included Farrington & Associates and The [LKG].

- When offering things of value, Brian L. Potashnik and Cheryl L. Potashnik would and did *require invoices from Farrington & Associates to make it appear that the payments to Farrington & Associates were for professional and legitimate services* when, in fact, the sham invoices were for giving things of value to Hill and Lee in return for official acts to be performed by Hill and Lee.

Count 15 alleges, in part, that:

- As a member of the City Council and certain of its committees, *Hill would and did condition his official support of Developer*, who sought City Council approval of resolutions for tax credit projects located in Districts 5 and 8, on Developer's *compliance with the extortionate demands* made by Lee and by Hill and Lee's associates.

- As a plan commissioner of the CPC, *Lee would and did condition his official support of Developer*, who sought City Council approval of resolutions for tax credit projects and CPC approval of zoning change applications, located in Districts 5 and 8, *on Developer's compliance with the extortionate demands* made by Lee and by Hill and Lee's associates.

- Hill[] and Lee's associates, including Reagan, McGill, Rashad, Robertson, Spencer, Slovacek, Dean and Lewis, *would and did make extortionate demands for things of value from Developer*, including cash payments, construction contracts, and equity participation in affordable housing projects, for their own benefit and the benefit of Hill and Lee.

- Hill and Lee would and did direct their associates, including Rashad, Robertson and Spencer, to *form nominee companies and enter into sham business agreements* for the purpose of concealing their expected or actual receipt of things of value from Developer. The nominee companies included RA-MILL and The [LKG]…

- Hill, Lee, Reagan and McGill would and did require Developer to *enter into sham consulting agreements* with the BSEAT CDC for the purpose of concealing their expected or actual receipt of things of value from Developer. While seeking things of value, Hill and Lee would and did require that agreements with the nominee companies, RA-MILL and The [LKG]…, be reduced to writing *to make them appear to be lawful agreements for professional and legitimate services* when, in fact, the sham agreements were for giving things of value to Hill and Lee and their designees in return for official acts to be performed by Hill and Lee.

- Hill and Lee would and did postpone official votes on Developer's applications regarding affordable housing projects until Developer entered into agreements and made payments thereunder.

The only differences between the facts alleged in Count 10 and those alleged in Count 15 are the

alleged *acquiescence* of the Potashniks in the scheme as opposed to the *rejection* by Developer of the scheme, and a change in some of the participants who helped carry out the overarching objective. It is not necessary for the Indictment to charge each Defendant with participation in each phase of the conspiracy,[125] but "overlapping membership in various activities may reflect a single continuing plan or scheme."[126] Here, the change in some participants does not undermine the Court's determination that a single overarching conspiracy existed, and in fact the overlapping membership of Hill, Lee, Robertson, Spencer and Slovacek confirms one ongoing affordable housing scheme.

The Potashniks argue that "[t]he extortion/fraud scheme alleged in Counts 15 and 18 is vastly different [from] the bribery scheme alleged against the Potashniks in Count 10," and that "there is no allegation that the Potashniks had any knowledge of McGill, Rashad, Dean or Lewis or the roles these individuals played in the alleged conspiracies that are unrelated to [them]." However, it is not necessary that an indictment charge that a defendant knew all the participants in a conspiracy, or details of the conspiracy, so long as it alleges "knowledge of the conspiracy's essential nature."[127] The subject Indictment alleges sufficient participation by the Potashniks to support a finding that they had "knowledge of the conspiracy's essential nature," i.e., the payment of bribes to promote their business interests.

Also, "where it is shown that a single 'key man' was involved in and directed illegal activities, while various combinations of other defendants exerted individual efforts toward a common goal, a finding of the existence of a single conspiracy is warranted."[128] In this case, Hill and Lee qualify as the "key men" who allegedly directed their associates to accept and/or extort

---

[125] *See Lindell*, 881 F.2d at 1318; *Elam*, 678 F.2d at 1246-47.
[126] *DeLeon*, 641 F.2d at 334.
[127] *Lindell*, 881 F.2d at 1318; *Elam*, 678 F.2d at 1246.
[128] *Lindell*, 881 F.2d at 1318; *Elam*, 678 F.2d at 1247.

bribes from affordable housing developers in exchange for assistance in their official capacity.

Therefore, this Court finds that, regardless of some changes in membership, and regardless of

actual knowledge by all participants of the extent of the conspiracy, the Indictment properly

alleges one overarching conspiracy that legitimizes joinder of these Defendants under Rule

8(b).[129]

However, even if this Court were to find two distinct conspiracies, their joinder would

still be proper under Rule 8(b).  Where multiple conspiracies are charged, a court's inquiry into

the propriety of joinder must go one step further—the court must "focus on whether the two

separate conspiracies alleged…are part of the same series of acts or transactions."[130]  If this

Court finds that "the facts underlying each offense are so closely connected that *proof of such*

*facts is necessary to establish each offense*," then joinder would be proper under Rule 8.[131]

Looking to the facts underlying Counts 10 and 15, proof of each set of facts is in fact necessary

to establish each offense.  As this Court observed in its Memorandum Opinion of January 18,

2008:

> Each venture's success was intimately bound up with the other's … By allegedly
> playing each developer against the other, and exploiting Developer and SWH's[132]
> competition for approval of affordable housing tax credits in District 5, Hill and
> Lee would be able to maximize payments from each… *Hence, the simultaneous*
> *solicitation of bribes from SWH and Developer, while the DCC [Dallas City*
> *Council] and DCPC were considering both developers' projects, enabled Hill*
> *and Lee to auction their votes to the highest bidder, and thereby realize the*
> *largest possible payments from both.*  Thus, joint implementation of the schemes
> was necessary to achieve the overarching conspiracy's alleged larger objective—
> maximizing bribe receipts.[133]

The Court still finds this reasoning to ring true.  At trial, proof that the Potashniks provided

---

[129] *See Elam*, 678 F.2d at 1247.
[130] *Welch*, 656 F.2d at 1049.
[131] *Harrelson*, 754 F.2d at 1176-77 (citations omitted) (emphasis added); *Welch*, 656 F.2d at 1049.
[132] Southwest Housing Development Company, Inc. was the for-profit corporation out of which the Potashniks' operated their affordable housing projects.
[133] *United States v. Dean*, No. 3:07-CR-289-M, 2008 WL 168541, at *4 (N.D. Tex. Jan. 18, 2008) (emphasis added).

certain payments, which were funneled through sham consulting agreements and fabricated invoices, and thereby secured official support of their housing development projects from Hill and Lee, is integral to demonstrating the flip side of the coin—that Developer's refusal to enter into such "consulting agreements" was directly related to the postponement and denial of Developer's housing development applications in the City Council and the CPC. Given the nature of the allegations in Counts 10 and 15, it is clear that proof of one is integral, even necessary, to establish proof of the other, and therefore even if two distinct conspiracies in fact exist, joinder of these Defendants is still proper under Rule 8(b).[134]

### 2. Joinder of Counts 18-20 with Counts 10-17

The Potashniks' severance argument also encompasses the second reserved issue: whether a joint trial of Count 18 with Counts 10 and 15 is proper. The Potashniks claim that the schemes charged in Counts 15 and 18-20 are "vastly different" from the bribery scheme charged against the Potashniks. They further argue that the bribery scheme alleged in Counts 10-14 "bears no relation" to the offenses charged in Counts 19-20, and that as a result they are improperly joined as Defendants under Rule 8(b). Finding that these Counts are also part of the same series of acts or transactions, this Court holds that joinder of Counts 18-20 with Counts 10-17 is proper under Rule 8(b).

Count 18 names Defendants Hill, Lee, Farrington, Spencer, and Slovacek. The facts underlying this Count allege that Lee, Spencer, and Slovacek created for-profit entities, namely The LKC and Kiest Blvd., to purchase and develop real estate projects, and that Hill and Lee then used their official positions and influence to obtain undisclosed personal benefits through those entities.

---

[134] *See also Elam*, 678 F.2d at 1246 (where activities from one aspect of the alleged scheme were "advantageous" to the success of another aspect of the scheme, and joinder was therefore proper under Rule 8).

The Court finds that Count 18 is also part of the same overarching affordable housing scheme involving projects coming before the Dallas City Council, and constitutes another link in the same series of acts and transactions as Counts 10 and 15. Count 18 is interconnected in time, place, manner, and membership to Counts 10 and 15. The time periods for these three Counts substantially overlap—the facts underlying Counts 10 and 15 are alleged to have occurred between August 2004 and June 20, 2005, and those behind Count 18 are alleged to have occurred between November 5, 2004, and June 20, 2005. The objects of the conspiracy are virtually identical—to unjustly enrich Hill, Lee, and their associates by using Hill and Lee's official positions and influence, and to conceal Hill and Lee's personal financial interests in the real estate projects they supported in their official capacities, using the same front companies to conceal the scheme.

The facts underlying Count 18 are also integrally related to the facts underlying Counts 10 and 15. In Count 18, the Government alleges that Hill, Lee, Spencer, Slovacek, and Farrington were all involved in securing real estate development projects in which Hill and Lee had a personal financial stake, using front companies and sham invoices. Counts 10 and 15 detail similar attempts by Hill, Lee, and their associates to force the Potashniks and Developer to utilize specific subcontractors, and to pay sham invoices, in return for Hill and Lee's official support of affordable housing projects. Even though Count 18 is brought under different statutory authority, the underlying facts are similar to those supporting Counts 10 and 15, and they share the same global objective of generating a profit for the conspirators by using the official influence Hill and Lee had over the affordable housing projects in the City.

In *United States v. Elam*, the Fifth Circuit highlighted the importance, in analyzing an alleged conspiracy, of overlapping membership, knowledge of the existence of members in a

related enterprise, and the existence of a "key man" involved in and directing the illegal activities.[135] Each of these factors is present in Counts 10, 15 and 18. As in Counts 10 and 15, Hill and Lee qualify as "key men" who directed the illegal activities alleged in Count 18. The membership in these Counts is also very similar:

> *Count 10*: Hill, Lee, Farrington, Potashnik, Robertson, Spencer, Slovacek

> *Count 15*: Hill, Lee, Reagan, McGill, Rashad, Robertson, Spencer, Slovacek, Dean, Lewis

> *Count 18*: Hill, Lee, Farrington, Spencer, Slovacek.

Hill, Lee, Spencer, and Slovacek are all named in Counts 10 and 15. Farrington is the only Defendant not named in both Counts 18 and 15, but she is named in Count 10. The substantially overlapping membership in the three conspiracy Counts further supports the Court's finding of one overarching conspiracy.

If the "totality of the evidence" sufficiently demonstrates a "concert of action unified by a common purpose," then it is proper to characterize the different conspiracy Counts as a single conspiracy.[136] The Fifth Circuit explained in *Elam*:

> Where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, or where the character of the property involved or the nature of the activity is such that knowledge on the part of one member concerning the existence and function of other members of the same scheme is necessarily implied due to the overlapping nature of the various roles of the participants, the existence of a single conspiracy will be inferred.[137]

Focusing on whether "the activities of one aspect of the scheme [were] necessary or advantageous to the success of another aspect of the scheme or to the overall success of the

---

[135] *Id.* at 1239.
[136] *See id.* at 1246.
[137] *Id.* In this case, the Court can infer with little difficulty that members common to Counts Fifteen and Eighteen were aware of the overarching scheme.

venture,"[138] the Court again finds evidence of a single overarching conspiracy. Theft of public services involves the abuse of public office by Hill and Lee, which deprives the citizens of Dallas of their right to the honest services of Hill and Lee. Logically, the use of deceit, fraud, concealment, bias, conflict of interest, self-enrichment and self-dealing, by means of materially false and fraudulent pretenses, representations, promises and material omissions (as alleged in Count 18 of the Indictment), was necessary and integral to the overall success of the alleged affordable housing venture. The personal involvement of Hill and Lee in these real estate companies further strengthened their stranglehold on the Dallas affordable housing market, as evidenced by Lee's alleged coercion of a property owner to sell his interests in privately owned land for a below market price. This involvement was undoubtedly "advantageous" to the success of the overarching scheme, as Hill and Lee allegedly utilized their influence to profit from the Dallas affordable housing market.

Counts 10, 15 and 18 are "several parts inherent in a larger common plan" which the Fifth Circuit expressly approved of in the context of joinder.[139] The overlapping memberships and common modes of operation (i.e., the use of sham consulting agreements to conceal or coerce the receipt of bribes, and the use of front companies to profit from affordable housing tax credits) bolster that conclusion. The interrelatedness of Count 18 with Counts 10 and 15 is sufficient to justify joinder of all Defendants named in these Counts under Rule 8(b).

As for Counts 19-20, this Court has not previously considered the issue of whether the money laundering Counts are properly joined with the remaining counts. Counts 19 and 20 allege a conspiracy to commit money laundering from August 2004, to June 20, 2005. Count 19 names Defendants Hill, Lee, Farrington, Robertson, Spencer and Slovacek, and Count 20 names

---

[138] *Id.*
[139] *See id.*

Defendants Hill, Reagan, Dean and Lewis. Count 19 incorporates the facts underlying the

Bribery Counts, and alleges concealment of funds derived from the unlawful bribery alleged in

Counts 11-14. Count 20 incorporates the facts underlying the Extortion Counts, and alleges a

conspiracy to conceal funds derived from the unlawful extortion alleged in Counts 16-17.

The Potashniks argue that Counts 19-20 are improperly joined because the Potashniks are

not specifically charged in these Counts. The Fifth Circuit specifically addressed the propriety

of joining money laundering counts with other substantive offenses in *United States v. Metz*, in

the context of a large narcotics conspiracy. [140] There, the Court held that "the indictment

adequately shows a singular conspiratorial objective: a large-scale narcotics transaction.

*Adequately alleged as facets of that same cocaine distribution scheme were the plan to launder*

*its illgotten proceeds*, the preliminary sale on September 17, and the preparations for the

December 14 transaction."[141] The Fifth Circuit reiterated, "[t]hat the indictment did not charge

appellants with active participation in each phase of the conspiracy does not effect [sic]

misjoinder."[142]

This Court finds that Counts 19-20 are part of the same series of acts or transactions as

Counts 10-18. The Indictment properly asserts that the funds allegedly laundered originated

from the illegal activity charged in the prior Counts. As a result, joinder is proper as to these

Counts under Rule 8(b).

### B. Discretionary Severance under Rule 14

The Potashniks argue that "a Rule 14 [severance] is required because a joint trial presents

a serious risk of prejudicial spillover if the Potashniks were made to stand trial with 13 [sic]

other defendants (7 of which [they are] … not alleged to have anything to do with and 15 counts

---

[140] 608 F2d 147, 152 (5th Cir. 1980).
[141] *Id.* at 153 (emphasis added).
[142] *Id.*

alleging 4 criminal conspiracies that [they are] … not involved in)." The Potashniks also argue that "[n]otwithstanding the Court's limiting instructions, there is a real risk that the jury may nevertheless find the Potashniks guilty by association with those defendants rather than objectively evaluating the proof against [them]." The Potashniks finally argue that in addition to the "prejudicial spillover risk inherent," a joint trial would also "compromise the Potashniks' Sixth Amendment right to cross-examine witnesses testifying against them, particularly where as here, there is a risk of antagonistic defenses between the defendants."

The Court must evaluate these claims to determine if they amount to evidence that a *specific legal right* of the Potashniks would be compromised by a joint trial, or if the jury would in fact be prevented from making a reliable determination of their guilt or innocence.[143] The Fifth Circuit, in *United States v. Welch*, provided the test for severance under Rule 14:

> Whether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct...If so, *though the task be difficult*, *severance should not be granted.*[144]

### 1. Spillover Effect

The Court finds the Potashniks' argument that severance is necessary to prevent prejudice from the spillover effect of the evidence at trial insufficient to justify severance. The "mere presence of a spillover effect does not ordinarily warrant severance."[145] The burden is on the defendant to "show that 'a *miscarriage of justice* looms.'"[146] It is true that in complex multi-defendant cases the risk of prejudice is heightened. However, contrary to the Potashniks' assertion that severance is *required*, limiting instructions to the jury will usually alleviate the risk

---

[143] *See Zafiro*, 506 U.S. at 539 (emphasis added).
[144] *Welch*, 656 F.2d at 1053-54 (emphasis added).
[145] *Id.*
[146] *Dillard*, 2007 WL 3326833, at *3 (citing *Ramirez*, 145 F.3d at 355) (emphasis added).

of prejudice.[147]  Importantly, the Court cannot presume that prejudice will result, without the Potashniks identifying *specific prejudice* that will result from joinder.

Rather than claiming that specific evidence of past crimes or instances of bad acts will be introduced against their co-defendants and be impermissibly attributed to them at trial, the Potashniks argue that the joinder of Counts in which the Potashniks are not named will generally result in the jury improperly associating their guilt with that of the Defendants who are named in those other Counts.  They argue that, "[t]o a juror, however, the allegations may seem related enough (as they all involve Hill and Lee and relate to affordable housing deals) to mean that if they deem the public officials guilty of an offense (e.g., extortion), the Potashniks are also guilty in separate charges because they had dealings with these same officials."

In fact, "it is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials."[148]  Absent *specific evidence* demonstrating a likelihood of improper imputation of guilt, the Court will not order severance under Rule 14.  The Court will assume that the jurors in this case will follow its instructions and satisfy their obligations to the Court.

The Potashniks also argue that "there is a significant risk of juror confusion and juror prejudice resulting from the quantity of potential evidence against the Potashniks' co-defendants."  However, the Fifth Circuit has repeatedly held that a "quantitative disparity in the amount of evidence offered against one defendant in relation to other co-defendants is also normally insufficient to warrant severance under Rule 14."[149]  For example, the appellant in *United States v. Pofahl* argued that his limited role in the alleged conspiracy supported

---

[147] *Zafiro*, 506 U.S. at 539.
[148] *Id.* at 540.
[149] *See, e.g., Krenning*, 93 F.3d at 1267; *Mitchell*, 31 F.3d at 276; *Pofahl*, 990 F.2d at 1482; *Harrelson*, 754 F.2d at 1175.

severance, claiming that his drug activities were limited to 210,000 tablets of ecstasy out of approximately 5.6 million total tablets involved in the conspiracy, and that his conduct was referenced on only 53 out of the 900 pages of transcript.[150]  In rejecting his claim, the Fifth Circuit held that "a quantitative disparity" in the evidence was clearly insufficient in itself to justify severance, and found the trial court's limiting instructions were sufficient.[151]

The Court declines to find that this case presents an extreme risk of spillover which warrants severance under Rule 14.  The Potashniks have not demonstrated the potential for spillover such that a jury would be incapable of sorting through the evidence when provided with proper limiting instructions.[152]  Moreover, the Court "must balance the public's interest in economy of judicial administration with the possible prejudice to the defendant."[153]  Here, the expense of severing the Potashniks would be costly, in terms of judicial resources spent on two separate trials arising under one overarching conspiracy, and in terms of Government resources spent on presenting substantially similar evidence in two trials.  Therefore, the Court finds that the public's interest in judicial economy outweighs any potential prejudice from the possible spillover effect in this case, and that limiting instructions will be sufficient to cure any such prejudice.

---

[150] *Pofahl*, 990 F.2d at 1483 n.34-35.

[151] *Id.* at 1483.

[152] The Potashniks argue that "the type of evidence the government will use at trial against the defendants in Counts 15 and 18-20 will undoubtedly be very similar to the type of evidence that the government will use against defendants to prove the allegations in Count 10—e.g., Title III wire intercepted recordings and the fruits of government searches, seizures and subpoenas—a potentially large volume of documentary evidence showing various business agreements and contracts involving some of the same entities.  This evidence may confuse the jury into viewing evidence relating to one count and unfairly attributing it to another defendant named in another count." The Court notes that if it were to grant severance under Rule 14 on this ground, joint trials would be virtually impossible to maintain, as the Potashniks' proffered concern would occur in almost *any* joint criminal trial with multiple counts.  Such a holding would be in direct conflict with the United States Supreme Court's mandate that there be "a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537.

[153] *Harrelson*, 754 F.2d at 1176; *see also Matthews*, 178 F.3d at 298 ("We must also balance the possibility of prejudice against the interest of judicial economy.") (citing *United States v. Posada-Rios,* 158 F.3d 832, 863 (5th Cir.1998)).

## 2. *Confrontation Clause*

The Potashniks argue that "there is a risk that several defendants may have antagonistic defenses and evidence may be introduced at trial where one defendant makes statements that inculpate another defendant," and that in such cases, severance is required. Specifically, the Potashniks point to statements made in Title III call intercepts, by co-defendants, which "implicate other defendants in alleged wrongdoing or attempt to characterize the conduct of other defendants as being criminal." The Potashniks contend that the use of such statements at trial "would pose a serious threat to the Potashniks' right to confront witnesses against them."

In evaluating the Potashniks' Confrontation Clause claim and their objection to the use of the Title III call intercepts, the Court must make a two-tiered inquiry. First, are the statements at issue testimonial; and if so, is the declarant available for cross-examination? Second, if the statements are non-testimonial, are they admissible under the Federal Rules of Evidence, i.e., through the co-conspirator hearsay exception?[154] This Court concludes that testimonial statements are made to persons serving in an *official capacity*. As the Fifth Circuit has held, "[s]tatements made between co-conspirators in furtherance of a conspiracy are *not testimonial*."[155] As a result, if the statements identified by the Potashniks qualify as statements made between co-conspirators, during the course of and in furtherance of the conspiracy, they will be unable to sustain a viable challenge to their admittance under the Confrontation Clause, because the statements are non-testimonial and the Confrontation Clause will not apply.

The Potashniks initially point to two statements made and recorded in Title III call intercepts, between another Defendant and Developer, and between two other Defendants (one of whom has pled guilty), referencing Brian Potashnik. The Potashniks assert that the introduction

---

[154] *See Savoca*, 335 F. Supp. 2d at 391 ("[i]n the wake of the *Crawford* decision, the crucial inquiry is whether a particular statement is testimonial or non-testimonial.").
[155] *King*, 541 F.3d at 1145-46 (citing *Crawford*, 541 U.S. at 56) (emphasis added); *see also Holmes*, 406 F.3d at 348.

of these statements in a joint trial would compromise their specific trial right of confrontation, in direct violation of *Bruton v. United States*,[156] because the non-pleading Defendant will likely claim his Fifth Amendment right to remain silent at trial.  The Government counters that *Bruton* does not apply because the statement was made between co-defendants and not to the authorities, and that the other speakers, Developer and the pleading Defendant, are fully available for cross-examination and *Crawford* is therefore not implicated.  The Government argues further that whether or not Counts 10-14 are severed under Rule 14, this evidence would still be admissible against the Potashniks, and the non-pleading Defendant could still claim his right to remain silent, therefore mooting the Confrontation Clause challenge.

The Potashniks rely on *United States v. Schmick*,[157] where the court held that the admission of an extrajudicial statement made by a non-testifying codefendant violated *Bruton*.[158]  In *Schmick*, the statement by the co-defendant was an admission that he had gone to Houston to obtain explosives, but recruited another defendant to act in his place.  That statement "directly implicated" both defendants.  In rejecting admission of the statement, the Fifth Circuit partly relied on the fact that the district court had found that the statement was not made "in furtherance of the conspiracy," and therefore did not fall under the well-recognized hearsay exception.[159]

Decided fourteen years before the Supreme Court's decision in *Crawford, Schmick* did not evaluate whether the extrajudicial statements were testimonial in nature.  Here, the Court finds that the statements identified by the Potashniks, in their original Motion for Severance, and in their supplemental briefing, are not testimonial.  The statements occur during Title III call intercepts, are not made to an official, and therefore are not protected by the Confrontation

---

[156] *Bruton*, 391 U.S. at 126.
[157] 904 F.2d 936 (5th Cir. 1990).  The Potashniks actually cited to "*United States v. Schmidt*," however, the citation makes clear that they intend to cite to "*United States v. Schmick*."
[158] *Id.* at 943.
[159] *Id.*

Clause.  The Potashniks cannot maintain a Confrontation Clause challenge to joinder because the

statements proffered that allegedly violate the Confrontation Clause do not, by definition, fall

within its protection under *Crawford v. Washington*.[160]  As such, the admissibility of these extra-

judicial statements is governed by the Federal Rules of Evidence at trial, including their

admissibility under the co-conspirator hearsay exception.[161]

The Court is not required to now determine the evidentiary issue associated with the

admissibility of the proffered statements.  The trial court must first "determine that there is

substantial, independent evidence of a conspiracy" or may admit the statement, with it being

connected up later.[162]  If the Court conducts a *James* hearing to determine the admissibility of

Title III call intercepts, then the Potashniks may object to the admissibility of the statements at

that time.  The Potashniks may also reassert their Motion for Severance if the evidence is

admitted but they find evidence of the alleged overarching conspiracy to be lacking at trial, at

which time the Court will determine if the extra-judicial statements have in fact been "connected

up."

### 3. Antagonistic Defenses

The Potashniks allege that "there are other aspects of antagonistic defenses that are raised

if all the defendants were tried jointly, which would also impact the Potashniks' Sixth

Amendment confrontation rights."  The Potashniks' main contention is that "the tension between

raising the issue of extortion versus complicity and the issue of whether the Potashniks had any

idea of the relationships… between and among the other defendants" qualify as antagonistic

defenses that warrant severance under Rule 14.  A defendant may be able to show specific

prejudice in a joint trial of multiple defendants by demonstrating that he plans to present a

---

[160] *See King*, 541 F.3d at 1145.
[161] *Crawford*, 541 U.S. at 68.
[162] *Peacock*, 654 F.2d at 349 n.1.

defense that is completely antagonistic to that of his co-defendants. However, "[t]o justify severance ... the defenses must be more than merely antagonistic; they must be irreconcilable and mutually exclusive."[163]

Simply put, for the Potashniks to succeed on this claim they must demonstrate that it is impossible for the jury to accept their defense if they also accept the defenses of the other co-defendants. Looking to the facts of this case, the Potashniks claim that one possible defense is that they did not willfully bribe Hill and Lee as alleged in Counts 10-14, but rather were victims of extortion as was the Developer in Counts 15-17. Brian Potashnik's counsel argued before the Court that:

> [A joint trial] would put us in a position to be proving the government's case against our co-defendants. I would in effect become a deputy prosecutor by pointing that my co-defendants actually go about their business extorting affordable housing. That's is [sic] what not supposed to happen. I'm not supposed to be put in that role where I basically either hoist my client on one petard or the other based on my trying to defend him against the flip flop indictment. There could not be a more antagonistic defense than my taking the position that we're part of the scheme, we're victims of the scheme.

However, the Court's view is that the relevant "antagonism" is not between the defense theory and the government theory of the case. The "antagonism" must exist between the defenses presented by the co-defendants, such that the defenses presented to the jury are "irreconcilable and mutually exclusive," and the jury is forced to choose between the competing defenses rather than make an independent determination of guilt. The Potashniks' defense that they were a victim of the scheme rather than a part of it is not irreconcilable with possible defenses raised by co-defendants; for example, that the invoices were legitimate for services performed, or that Hill and Lee never conditioned their support of affordable housing projects on the receipt of such funds, but acted on the merits of the applications. The jury will be free to determine if the

---

[163] *Kaufman*, 858 F.2d at 1004 (citing *Toro*, 840 F2d at 1238).

Potashniks were willing participants in the bribery scheme, or were extorted into purchasing official support for their housing projects.

An argument similar to the Potashniks' was rejected by the Fifth Circuit in *United States v. Kaufman*.[164]  In that case, the Fifth Circuit explained that "there was nothing inherently antagonistic between one defendant's claim of entrapment and another's simple denial of guilt."[165]  The admission by two co-defendants of being part of a conspiracy did not preclude the jury from believing the appellants' defense of non-involvement in the same conspiracy.  The same logic applies in this case—that the Government is charging willful participation in the scheme does not preclude the Potashniks from claiming that their participation was actually involuntary.  In fact, the existence of the Extortion Counts may actually aid the Potashniks in their defense, as the plausibility of extortion may be more easily believed by the jury if the Government produces evidence of extortion of the Developer alongside evidence of the Potashniks' participation in the scheme.

Even assuming that the Potashniks' defenses were actually antagonistic with their co-defendants, the United States Supreme Court has explained that "[m]utually antagonistic defenses are not prejudicial *per se*."[166]  While some courts of appeals previously held that "mutually antagonistic" or "irreconcilable" defenses may be so prejudicial in some circumstances as to *require* severance under Rule 14, the Rule does not actually require severance *even if* prejudice is shown; "rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion," and "less drastic measures, such as limiting

---

[164] 858 F.2d 994, 1003-04 (5th Cir. 1988).  There, two co-defendants used an entrapment defense, essentially admitting they were part of the drug conspiracy, but were entrapped into involvement.  The appellants claimed that the use of this defense prejudiced their claims of innocence, i.e., their *lack of involvement* in the drug conspiracy.
[165] *Id.* at 1004 (citing *Toro*, 840 F.2d at 1238).
[166] *Zafiro*, 506 U.S. at 538.

instructions, often will suffice to cure any risk of prejudice."[167]

This principle was also applied by the Fifth Circuit in *United States v. Matthews*.[168]  In *Matthews*, each defendant's defense strategy was directly implicating the other defendant at trial, by claiming that the other defendant was the one that actually shot the victim.  The Fifth Circuit held that even "assuming without deciding that the Defendants' defenses were mutually antagonistic, the court's limiting instructions were sufficient to cure any prejudice."[169]  As a result, the Potashniks' request for severance due to antagonistic defenses fails for two reasons: (1) the defenses proffered are not truly antagonistic; and (2) even if the defenses are antagonistic, the potential prejudice can be cured with proper limiting instructions at trial.

### 4.  Limiting Instructions

The Potashniks claim that "[t]he use of limiting instructions will not suffice to eliminate the prejudice in this case because the [u]nderlying events alleged in Counts 15 and 18-20 are so numerous that there is a significant danger that the sheer magnitude of the evidence involving the other co-defendants will cause the jury to conclude that the Potashniks are guilty as well..."  The test in the Fifth Circuit is "[w]hether under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct."[170]

The Court does not find that the evidence likely presented at trial will be so confusing that the jury will be incapable of following the Court's instructions, or will be unable to compartmentalize the evidence against each Defendant.   In *Harris*, the Fifth Circuit warned

---

[167] *Id.*
[168] *Matthews*, 178 F.3d at 299.
[169] *Id.*
[170] *United States v. Diaz-Munoz*, 632 F.2d 1330, 1337 (5th Cir. 1980).

that:

> If, as a practical matter, the natures of the offenses or of the evidence are of such a character or are so complicated that a jury could not reasonably be expected to separate the indictments or the defendants and to evaluate the evidence properly and individually against each separate defendant on each separate charge, then the trial judge should sever the trials.[171]

However, the nature of the offenses, namely bribery, extortion and money laundering, are not so complicated that a jury could not separate the evidence as to each Defendant. As a result, the Court finds that limiting instructions will be sufficient to cure potential prejudice.

### 3. Joinder of the Tax Evasion Counts

The Potashniks also raise the third and final issue reserved in this Court's Memorandum Opinion of whether joinder of the Tax Counts is proper. This question applies to the propriety of joinder under Rule 8(b) of Counts 21-25, Count 26, and Counts 27-30. These Counts pertain to Defendants Hodge, Hill, and Reagan respectively.

The Court asked the Government to submit additional briefing on the origin of the funds behind the Tax Counts. The Government concedes that "there were no tax counts in the indictment that were supported wholly by proof of the indicted bribery or extortion schemes." The Government further acknowledged the following:

- For Counts 21-25, Hodge allegedly underreported at least $74,000.00 in taxable income—*less than half of which* came from the Potashniks. "[I]n no single year did all the under-reported income come from the Potashniks."

- For Count 26, Hill is charged with evading taxes over a ten year period in the amount of at least $216,000.00. "There is no specific tax charge against him related solely to the receipt of bribe or extortion monies."

---

[171] *Harris*, 458 F.2d at 673.

- For Counts 27-30, Reagan is charged with tax evasion arising from his failure to report "charitable contributions" to his community organization (the Black State Employees Association of Texas), which were allegedly converted and spent for his own personal use, in excess of $500,000.00. "Only a small portion of this $500,000.00 was money received by him (BSEAT) during the extortion scheme alleged in the indictment and it relates only to the 2004 tax year (Count 30)."

The Fifth Circuit has interpreted Rule 8(b) to require a "*substantial identity* of facts" to support joinder of multiple defendants.[172]  Given that the Government has admitted that the majority of evidence relevant to proving the Tax Counts is unrelated to the remaining Counts in the Indictment, the Court holds that joinder of the Tax Counts is improper under Rule 8(b).  It cannot be said that the facts underlying the Bribery and Extortion Counts will constitute proof *necessary* to establish the Tax Counts because the evidence is in large part unrelated.  Because of the limited relationship between the income generated from the underlying bribery and extortion offenses and the income that the Defendants allegedly failed to report to the Internal Revenue Service, the Court finds the relationship too tenuous and remote for joinder of all Defendants with these Counts.

The Potashniks rely on *United States v. Lynch*, where this Court granted a defendant's motion to sever tax evasion counts.[173]  In *Lynch*, the defendant presented evidence that the monies not reported originated from an unrelated legal settlement, not from the illegal activities alleged in the indictment.  This Court found that "the Government is correct that this [tax evasion] count is linked to the Defendant's alleged general disposition to fraudulently conceal property that should be divulged, [but] count 36's relationship to the fraudulent counts in the rest

[172] *Krenning*, 93 F.3d at 1266.
[173] 198 F. Supp.2d 827, 828 (N.D. Tex. 2001).

of the Indictment is tenuous. Further, it may lead to jury confusion."[174]  In the case at hand, the connection is likewise tenuous.  The actual proceeds from the alleged illegal activities comprise only a small portion of the income not reported in the Tax Counts, and therefore joinder is improper.

The Potashniks also rely on *United States v. Diaz-Munoz*,[175] where the Fifth Circuit found improper the joinder of counts for filing false tax returns with those asserting embezzlement and insurance fraud.  In that case, the government specifically represented to the trial court that: "The proof at trial will show the allegations of the subject counts to be part of a series of transactions which *began with acts of fraud and were concluded when the fraudulent income was not reported* as income to the Internal Revenue Service."[176]  The Fifth Circuit concluded on appeal that "the government's representation that the defendants and counts would be tied together led the trial judge to his erroneous holding that the requirements of FED. R. CRIM. P. 8(a) and (b) were satisfied. In alleging that these counts and defendants were connected, *the government assumed the risk that its proof would fail, and it conceded this failure on oral argument*."[177]  In this case, the Government has already conceded that the majority of the evidence relating to the Tax Counts is outside the chain of evidence required to prove the remaining substantive offenses charged in the Indictment.  As a result, this Court is required to sever the Counts under Rule 8(b).

The Government relies on an Eighth Circuit decision, *United States v. O'Connell*,[178] where "proof of the tax count, as charged in the indictment, also required evidence of income

---

[174] *Id.* at 830 ("the relationship between the Defendant's alleged fraudulent embezzlement scheme against HUD is not closely connected to the alleged filing of a false tax return").
[175] 632 F.2d at 1336.
[176] *Id.* (emphasis added).
[177] *Id.* (emphasis added).
[178] 841 F.2d 1408, 1432 (8th Cir. 1988).

from the sale of illegal drugs.  If the indictment invites joint proof, as here, the prima facie validity of joinder is shown."[179]  In *O'Connell*, proof of the tax count relied on proof of the sale of marijuana and the income generated from the sale of drugs.  The tax count was directly based on the defendants' failure to report the income from the sale of drugs, so joinder was proper.  But in this case, proof of the Tax Counts relies in part on proof of the receipt of monies as a result of the alleged bribery and extortion, but in large part involves money allegedly received from uncharged conduct.  Because the Tax Counts only invite joint proof to a limited degree, the Court holds that the Tax Counts are improperly joined under Rule 8(b) and must be severed.[180]

### 4. Defendant John J. Lewis's Motion to Sever Counts 15, 17, 20, and 31 (in which he is joined) from Counts 1-9, 21-25, and 27-30

Defendant Lewis moves to sever Counts 15, 17, 20, and 31 from Counts 1-9, 21-25, and 27-30.  The Court hereby **GRANTS** Defendant Lewis's Motion for the reasons stated above.

### 5. Defendant Ronald Slovacek's Motions for Relief from Misjoinder of Counts 1-9, 21-25, 26, 27-30

Defendant Slovacek filed four Motions requested relief from misjoinder of Counts: (1) Counts 1-9; (2) Counts 21-25; (3) Count 26; and (4) Counts 27-30, in which Defendant Rashad joined.  However, in light of the Court's prior severance of Defendants Slovacek and Rashad under Rule 14, the Court finds that these Motions are **MOOT**.

---

[179] *Id.*

[180] *But see United States v. Williams*, 809 F.2d 1072, 1086 (5th Cir. 1987) ("The indictment charged [defendant] in only counts 1 and 2: RICO conspiracy and substantive RICO violations. He was not charged with any of the income concealment activities. Those two charges encompassed eight of the original ten defendants. There is no question that joinder of these defendants was proper under Rule 8(b). The income tax concealment counts were properly tried with the RICO counts as part of a series of acts or transactions.").

## Conclusion

The Court, having considered the extensive briefing and arguments of the parties, hereby disposes of the pending Motions for severance as follows:

1.  Defendant Hodge's Motion is **GRANTED**, and Counts 1-9 are severed for joint trial with the Potashniks. Counts 21-25 are also severed for a separate trial, as to only Hodge.

2. The Potashniks' Joint Motion is **GRANTED** to the extent it requests relief from misjoinder of Counts 21-25, 26, and 27-30, the Tax Counts. The Tax Counts are severed for a separate trial with only the Defendant named in that Count: Counts 21-25 are severed for trial with only Hodge; Count 26 is severed for trial with only Hill; and Counts 27-30 are severed for trial with only Reagan. Insofar as the Motion requests severance of the Potashniks for a separate trial of only Brian and Cheryl Potashnik on the Counts naming them as Defendants, it is **DENIED**.

3. Defendant Lewis's Motion is **GRANTED**.

4. Defendant Slovacek's Motions, joined by Defendant Rashad, are **MOOT.**


**SO ORDERED this 17th day of December, 2008.**


**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**